Ruffiií, Chief Justice,
 

 having stated the case as above, proceeded: — The state in which the case is placed by the special findings of the jury, requires the affirmance of the judgment, if the opinion given by the Court upon either point, be correct; for that renders the other immaterial. It is not thought necessary, therefore, to discuss here the positions of the Judge who presided at the trial, upon the questions, as to the delivery of the deed.
 

 Upon the point of fraud, it must be taken upon the exception, that the deed was made before the marriage. The legal question which arises, is, whether .the deed thus made, upon the express intent found, is void as against the plaintiff. In the case of
 
 Tate
 
 v.
 
 Tate,
 
 1 Dev. & Bat. Eq. Rep. 22, I expressed for myself, the opinion, that such a deed is void. In that opinion, the whole Court now concurs.
 

 The act of 1784
 
 (Rev. ch.
 
 204, sec. 8,) makes several Important alterations in the rights of the wife. She was, before, dowable of all the lands of which her husband was seized during coverture; of which he could, by no method, deprive her. But she was not dowable of those of which the husband was not legally seized; although he might have enfeoffed another in trust for himself the day before the marriage, and expressly to prevent dower. She was also entitled to one-third of the surplus of the personalty, not disposed of by will; but subject to be deprived of the whole of it, by the dispositions of the husband in his lifetime, or by his will. The provision for her is in some respects increased, and in others, lessened, by the act. She cannot now be cut off from the personalty, either by advancements to children, or by testamentary gifts. She may dissent from the will, and then, or in the case of intestacy, shall have a child’s part of the personalty, and one-third of the lands of which her husband died seized, Uifts to her own children, or to those of a former marriage, made over before her marriage, are to be brought into
 
 *330
 
 hotchpot, for her benefit.
 
 Davis
 
 v.
 
 Duke,
 
 Conf. Rep. 361. This secures her, to a great extent, in a reasonable provision out of the personal estate. Not entirely, indeed. The husband may yet give away in his lifetime all his personal effects; and a child advanced, cannot be compelled to restore. But no man is expected to strip himself; nor to advance some children, so as to leave others destitute. In this respect, the wife is placed on the same ground with children not fully advanced; which is deemed a sufficient security to her. But in respect to dower, she stands alone; her rights being in opposition to all the children. It was necessary, therefore, to protect her, as against all of them, and against the acts of the husband in favour of any of them, which could have, or were intended to have, the effect of leaving her unprovided for. Hence, when her dower was confined to the lands of which he died seized, an enactment became indispensable, that she should not be injured by those alienations which the husband made for the sake of defeating her. It accordingly comes in by way of proviso to the clause which fixes her dower, and declares, that “ any conveyances made fraudulently to children, or otherwise, with the intention to defeat the widow of her dower hereby allotted, shall be held and deemed void, and such widow shall be entitled to dower in such land, so fraudulently conveyed, as if no conveyance had been made.”
 

 The Court does not understand his Honor’s declaration, that the rights of the widow are as much favoured, by the act of 1784, as those of creditors and purchasers are by that of 1715, to mean, that conveyances void as to the latter class of persons, in respect of the consideration, are also, for the same reason, void as to the widow. The case did not call for any exposition of that general doctrine. The remark seems not to have been material to the instruction needed by the jury, and is supposed to have been intended to express only the idea, that each class of those persons had established legal rights, and that every conveyance intended to defeat them, is equally avoided by the authority of a statute. This leaves it to be settled, upon the construction of each statute, what conveyances
 
 *331
 
 import in themselves the intent which vitiates them, under that statute. Between those statutes, there seems to be, upon their terms, and from the subject-matter, a material distinction. Conveyances may stand against a widow, which could not against purchasers and creditors. Upon the act of 1784, the observation is more obvious that only
 
 fraudulent
 
 conveyances are avoided, and not
 
 voluntary
 
 conveyances, as such. The statute, unlike that of 1715, is altogether silent upon the subject of the consideration. The intent spoken of, is the actual intent to defraud the
 
 widow;
 
 and the statute specifies no fact as therein supposed to denote its existence, or repel the imputation of it. The consideration of a deed does not necessarily — except as made to do so by statute — enter into the intent of the parties; although it is evidence of it, more or less strong, according to other circumstances. A deed made during the marriage, in trust for the husband himself, would be plainly within the act. The inference, that he divested himself of the seisin, to exclude his wife, would be irresistible. If made' long before marriage, and not in contemplation of it, there would be no evidence of such intent; or if made immediately before, and also communicated to the wife before marriage, there would be neither actual nor intended deception, without which, there is no fraud. Such bars have, however, been since removed, by another statute, which makes the wife dowa-ble of equitable interests ; which shows, by the way, the interpretation proper for the act of 1784, as to conveyances made at any time, which are wanting in good faith. But
 
 bona fide
 
 conveyances, that is to say, such as are not intended to defeat the wife, do not seem to be within the meaning, more than within the words of the act. Such are sales ; to make which, an unfettered power is allowed the husband. Such, too, appear to be
 
 bona fide
 
 gifts, whereby the husband actually and openly divests himself of the property and enjoyment in his lifetime, in favour of children, or others, thereby making, according to his circumstances, and the situation of his family, a just and reasonable present provision for persons having meritorious claims on him, and with that view; and not with the
 
 *332
 
 view to defeat, nor for the sake of diminishing the wife’s dower. If suitable advancements for children upon their going into the world, or setting up business, or other reasonable and immediate voluntary dispositions, were not deemed in the act
 
 bona fide,
 
 the purpose of the Legislature would have been more distinctly expressed, by saying, that the widow should be endowed of all lands of which her husband had been seized during the coverture, except such as he had in his lifetime conveyed upon valuable consideration. With respect to advancements to children, in particular, there would certainly have been a specific provision; since in the same act, the manner in which they shall be regarded, as between the children themselves, is expressly pointed out. Hence the conclusion is adopted, that the want of a valuable consideration, does not constitute, absolutely and conclusively, the fraud mentioned in the proviso of the 8th section.
 

 But the statute would be unmeaning, if it did not embrace every case, in which, whatever may be the form, the husband substantially reserves to himself the property, during his life. Such a disposition is necessarily but colourable, as determining presently his seisin.
 
 It is
 
 essentially testamentary, as between these parties; for the seisin of the husband determines only
 
 eo instanti
 
 with his life. A conveyance in those terms would, upon its face, create the mischief the act means to obviate. It would be bad, upon common law principles, within the custom of London.
 
 Turner
 
 v.
 
 Jennings,
 
 2 Vern. 612. 685.
 
 Fortesque
 
 v.
 
 Hennah,
 
 19 Ves. 67. So, if from other circumstances, can be collected, that the apparent immediate disposition *■ is not
 
 bona fide,
 
 that is, was not meant to be simply what purn0rts to be; but that the donor intended that it «.a
 
 *
 
 should not interfere with his own enjoyment, but should hinder that of his wife, it would amount to the same thing.
 

 It must be immaterial, in such a case, whether the deed be made before or after marriage. The remoteness of the day of its execution from that of the marriage, may prove to the jury, that it was not made with the intent imputed to it. It can have no other effect. For when a
 

 
 *333
 
 statute makes conveyances, intended to defeat a legal right, void, upon the ground of fraud, all, whenever made which were intended to have that effect, are necessarily included. When secretly made, in contemplation of the marriage, that special intent constitutes express, positive, or actual fraud — as it is indifferently called, in the books, in contradistinction to that which is implied by law, merely from the tendency of an act. Express fraud must render everything into which it enters, vicious. It consists in meaning, at the time of an act, to produce thereby a particular prejudice to another; and that very consequence will be produced, if the act be allowed to stand. The statute 13 Eliz. makes void only such conveyances as are intended to defeat
 
 creditors;
 
 and therefore, a volun-tarv conveyance by one then having no creditor, is not
 
 J
 
 , ,
 
 ,
 
 . , . ■ apparently within it. Yet, if it be made with a view to becoming indebted, it is fraudulent and void.
 
 Taylor
 
 v.
 
 Jones,
 
 2 Atk. 602. This construction is absolutely necessary to the preservation of the rights in favour of which the statute is made. A debt contracted immediately after the debtor has made himself insolvent, stands upon the same footing with a previous one. There is the same intent in each case — inferred from the debtor’s disabling himself to pay, at the particular juncture, when he owed a debt, or intended to contract it.
 

 The same reasons apply to conveyances in prejudice of the right of dower. Indeed, they are stronger, upon the word used in the act of 1784. It is “ widow,” which is not appropriate to the living woman whom the donor has married, more than to her whom he purposes to marry. It is properly descriptive of any woman, whom the donor intents to defeat of her rights, as his widow, whenever she shall happen to become his widow; and makes the act reach every deed, at whatever period made, that was intended, when made, to intercept the marital rights of , . . . , - . the wife, arising upon a marriage had, or proposed.
 

 Here the evidence, upon which the question of intent was left to the jury, was nearly as strong as it could be. The deed was made fifteen days before the marriage; to
 
 *334
 
 three very young children, by a former, wife; was for the whole estate, real and personal, of the donor; who carefully concealed it from the intended wife, kept the deed and the estate until the marriage, and afterwards retained' the possession of the property about twenty five years. It is perfectly apparent, that a present advancement of the donees was the least of the donor’s thoughts ; and that he never meant to impair his enjoyment or control over the estate.
 

 The opinion of the Court is, therefore, that the interlocutory judgment rendered is not erroneous; which must be certified to the Superior Court, in order that it may be proceeded on, and the plaintiff have her dower allotted. And there must be judgment against the defendants, for the costs of this Court.
 

 Per Curiam. Judgment affirmed.