Petition for dower, filed by the widow of Thomas McGee, deceased, against the defendants, who are his children and his heirs at law. The counsel for the defendants moved to dismiss the petition because there was no allegation that the defendants as heirs had entered, and were seized as heirs, at the filing of the petition. The court was of opinion that there was no necessity for an express allegation that the defendants had entered and were seized as heirs, as the heirs are constructively in possession before actual entry; but at all events, the objection was waived by the answer and could only have been taken advantage of by special demurrer.
(106) The counsel for the defendants then moved to dismiss the petition because the petition alleged that Thomas McGee died seized, and did not allege that before his death he had executed the deeds of gift to his children mentioned in the answer fraudulently with an intent to defeat the dower of the petitioner. The court was of opinion that the petition need not allege the existence and fraudulent intent of the deeds. When their existence was alleged in the answers as a ground of defense, the petitioner by her replication might either deny their existence or might insist that they were fraudulent and void as to her.
Upon the issues submitted to the jury as to the validity of the deeds under which the defendants claimed, the evidence was that Thomas McGee, the deceased husband, had by his first wife four children, who are the present defendants; that some twenty years ago, upon the death of his first wife, he married the petitioner, by whom he had no children, but they lived happily together up to the time of his death; that the said McGee was a man of good estate and owned about 1,006 acres of land and 25 slaves; that some years before his death his daughter Dorothy intermarried with one Stanford, and they settled off to themselves; *Page 85 
that about six years before his death his son Thomas married, and was permitted to build a house and clear and cultivate, free from rent, that part of the land contained in the deed, which was afterwards made to him, with the exception of a small field and the mill, of which his father retained the possession up to his death; that his son William turned out badly, became much embarrassed, and left the State; that his daughter Elizabeth remained unmarried and continued to live with her father.
One witness proved that a few months before the deeds hereinafter mentioned were executed, he was at the house of McGee; that they were talking about the widow of one Wilkinson, who had the court before dissented from her husband's will; that McGee said he intended to give his widow a sufficiency to support her decently during her life, but he did not intend to leave his business so that it could be torn up as Wilkinson's was by the dissent of the widow — he would deed his (107) property before he died; that McGee was about 60 years of age, and died about eight months after the execution of the deeds.
Another witness proved that in August, 1841, when the deeds were executed, he was at the house of McGee and wrote them at his request, and also a deed of gift for some personal property to Mrs. Stanford; that McGee executed the deeds and delivered to Thomas his and to Elizabeth hers, and also delivered to Elizabeth the one for her sister, Mrs. Stanford; that before, or at the time of the delivery, the old man said, "My children, I shall expect to have the use of this property while I live," to which they assented; that he also told Elizabeth he could give nothing to his unfortunate son William, but if he came back she must let him live with her, and if she married she must make a deed of trust so as to secure him certain negroes which he named. The witness also stated that Mrs. McGee was not present when the deeds were executed; that he met her as he came out of the room; that she looked displeased, and said she thought there was some underhand work going on; that the witness told her nothing had been done except to make deeds to the children for the property which the old man had given them in his will which the witness had written for him some three or four years before. The witness stated that the will he alluded to was present when the deeds were executed, and he left it with the old man and had not seen it since. The witness stated that the old man's children had great influence with him, and he said while the deeds were writing that his first wife had been the making of him, and he felt bound to give her children a liberal support.
The two deeds produced by the defendants — containing the one 500 acres and the other 400 acres — embraced all the land belonging to the old man, except 106 acres, which included the house and about 90 acres of cleared land, and was about one-third in value and quality of all the *Page 86 
cleared land. The defendants' counsel offered to give in evidence a paper-writing executed by the old man a short time before his death, purporting to be his will, but which was not admitted to probate as (108) it was only attested by one witness, in which the said 106 acres were given to the widow for life. The counsel stated that the object of this evidence was to show that the old man did not intend to defeat his wife's dower, but intended to make ample provision for her. The court considered this evidence irrelevant and rejected it.
The court charged the jury that by law a widow was entitled to one-third of all the land her husband was seized of in fee at his death, for life, as her dower; and if the husband made any conveyance of his land with an intent to deprive the widow of this right to one-third, such conveyance was in law fraudulent and void as to her; and notwithstanding any conveyance so made to defraud her of her dower, he was still, so far as her right to dower was concerned, considered as dying seized of the land; that his intending to make what he considered an ample compensation for this right of dower made no difference, for he had no right to alter, abridge or diminish this right by any deed made solely for that purpose, and that when, just before his death, a husband made deeds of gift having the effect to interfere with this right, it was to be presumed that such was his intent, unless such presumption was rebutted by the evidence — as that his object was to advance a child and give him a start in the world; but when a husband made deeds of gift for a large part of his real estate and continued to use it as he had done before, those circumstances had a tendency to confirm the presumption that such was his intent.
The jury found the issues in favor of the petitioner. A motion for a new trial because the court erred in not dismissing the petition upon the grounds stated, because they erred in rejecting the evidence as to the paper-writing, and because the court erred in the charge to the jury, was overruled and judgment rendered for the petitioner, from which the defendants appealed.
We think it sufficient for the petition to follow the language of the statute and allege that the husband died seized. (109) It is not necessary it should notice the deeds to some of the heirs at law, for the widow may not know of them, or not so as to describe them, or that the donee will insist on them. Besides, if they be fraudulent, they are void by the statute as to her, and she may treat the land as if the deed had no existence. In Littleton v.Littleton, 18 N.C. 327, *Page 87 
and Norwood v. Barrow, 20 N.C. 578, the petitions stated that the husband died seized, and the heirs took issue thereon in that general form, which was approved. On the trial of the issue the deeds are evidence that the husband did not die seized, and that may be rebutted by evidence upon their face or proof aliunde that they were executed in fraud of the wife.
Upon the evidence in this case, the instructions to the jury were, in our opinion, entirely proper. The deeds conveyed to two of the children 900 acres out of 1,006 acres of land and 22 out of 25 slaves, which the husband owned, leaving but 106 acres of land to descend to two other children, and out of which his widow was to be endowed. There is direct evidence that the deeds were intended to operate only after the husband's death, and in fact he continued in the enjoyment of the property while he lived. This, we said in Littleton v. Littleton, showed the deed to be but colorable as an immediate conveyance, and that, without interfering with the maker's own enjoyment, it was intended to hinder that of the wife, and so was void as against her. But here the husband plainly declared that his object in making the deeds was to defeat his wife of the right of claiming dower as secured to her by law, which makes the case one of express fraud. The only way of repelling that imputation would have been for the husband to make an effectual provision for the wife as much to her advantage as if the deeds had not an existence. For that reason, we do not see, if the imperfect will had been completed, that it would have purged the positive fraud designed in executing the deeds. But it is not necessary to consider that, as we are of opinion that the paper was properly rejected. Not being a (110) will, it is but an empty subsequent declaration of the party, who perpetrated a legal fraud, that he did not intend to do so, or was willing to make some reparation for it, as far as he could. It is irrelevant to establish a bona fide intention in making the deeds.
PER CURIAM. No error.
Cited: Grant v. Grant, 109 N.C. 714.