BENJAMIN F. HENSON

*v.*

JAMES E. MOORE *et al.*

*Filed at Mt. Vernon September 29, 1882.*

1.  HOMESTEAD—*in the wife's land—by what law governed—power of disposition in the wife.*  A husband's homestead rights in the lands of his wife are determined by the law in force at the death of the wife, and not by any different law in force at any time prior thereto.  Under the law in force since 1874, a wife has no power to devise her homestead to another, and thus deprive her husband of that estate.  ·

2.  SAME—*abandonment—temporary absence.*  The fact of the absence of a husband from his residence on his wife's premises for a short time, in consequence of some difficulty with his wife, when he returns during her last sickness, and lives with her on the property till her death, will not be such an abandonment of the homestead as to deprive him of any right the statute gives him, or preclude him from claiming the estate of homestead.

3.  CONSTITUTIONAL LAW—*change of law relating to curtesy, dower and descent.*  It is competent for the legislature to change the law in regard to descent, dower and curtesy, or abolish expectant rights under such laws, at any time before they become vested estates by the death of the person from whom they are derived, when the land or property of the deceased will pass according to the laws then in force.  Any change, however, in the law after that will have no bearing on the parties' rights.

4.  DOWER *of the husband in wife's land—and his heirship in·respect thereto—change in the law after the marriage.*  A woman, at the time of her marriage, in 1869, owned certain lands, which she retained until her death.  By the law in force at the time of the marriage the husband was not entitled to dower in such land; but by the law in force at the time of the death of the wife, (August 30, 1877,) the estate by the curtesy was declared abolished, and the husband given dower in his wife's real estate, and by section 12 of the Dower act it was provided, that "if a husband or wife die testate, leaving no child or descendants of a child, the surviving husband or wife may, if he or she elect, have, in lieu of dower,  *  *  *  one-half of all the real and personal estate" remaining after the payment of debts.   The wife left a will disposing of her land to others than her husband, and he renounced the will, and claimed under the statute:  *Held,* that having elected to take under the statute, he became seized in fee of an equal undivided one-half of the wife's lands.

5.  CHANCERY JURISDICTION—*accounts between co-tenants.*  A court of equity has undoubted jurisdiction in suits between co-tenants of land for an accounting.

| 104 | 403 |
| 36a | 178 |
| 104 | 403 |
| 142 | 395 |
| 146 | 58 |
| 104 | 403 |
| 187 | ³601 |
| 91a | ³202 |
| 104 | 403 |
| 189 | ³477 |
| 104 | 403 |
| 193 | ³463 |

6. CHANCERY PRACTICE—*amending and retaining bill as to rights not passed on.* A wife by her will devised the east half of a tract of land owned by her at her death, to her brother for life, with remainder to his children, and the west half to a nephew in fee. At her death, in 1877, she had a husband, who survived her, and continued to occupy the land, and receive the rents and profits of the same. The brother filed a bill against the husband, praying for an account of the rents and profits, and that complainant's rights in the land be ascertained and declared, and he be declared the sole owner of the east half of the tract for life, free from any claim of the defendant, and for possession, and for other relief generally. The husband having renounced the will, was found by the court to be entitled to one-half of the whole tract in fee, and the bill was dismissed: *Held,* that the bill should have been retained, and amended, so that a partition might be had and an account taken, settling all the rights of the parties, and for this purpose the order of dismissal was reversed.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. DANIEL M. BROWNING, Judge, presiding.

Mr. R. J. STEPHENS, for the plaintiff in error:

The bill should not have been dismissed, but retained, and the rights of the parties adjusted. The court had jurisdiction to adjust the account of rents and profits among the several co-tenants. Story's Eq. Jur. sec. 466; Freeman on Co-tenancy, sec. 321.

Although the complainant was not entitled to the specific relief sought, the bill asked that the complainant's rights be ascertained and declared, and under this, and the general prayer, the court should have granted such relief as the facts authorized. Story's Eq. Pl. secs. 40–42; *Bryan et al.* v. *Primm,* Beecher's Breese, 59; *Isaacs* v. *Steele,* 3 Scam. 103; *Manchester* v. *McKee,* 4 Gilm. 519; *Vansant* v. *Allmon,* 23 Ill. 30; *Beebe et al.* v. *Bank of New York,* 1 Johns. 529.

Where a court obtains jurisdiction for any purpose, it will retain it for all purposes necessary to do complete justice between the parties. *Sherlock et al.* v. *Village of Winnetka et al.* 59 Ill. 389.

By the law in force at the marriage, the husband was entitled to no dower in his wife's land. His rights were the

same as at common law, except so far as modified by the Married Woman's act of 1861. This interest was an estate during coverture,—a freehold acquired by purchase, the consideration for which was the marriage. 2 Kent's Com. 131; *Rose* v. *Sanderson*, 38 Ill. 247; *Cole* v. *Van Riper*, 44 id. 64.

Notwithstanding the act of 1861, curtesy still existed in this State, (*Armstrong* v. *Wilson*, 60 Ill. 226, *Wolf* v. *Wolf*, 67 id. 55,) and that act could not operate to divest the husband of a vested estate, either of curtesy or during coverture. *Rose* v. *Sanderson*, *supra; Noble* v. *McFarland*, 51 Ill. 229. See, also, 2 Kent's Com. 131; Cooley's Const. Lim. 360; *Shortall* v. *Hinckley*, 31 Ill. 226; *Russell* v. *Rumsey*, 35 id. 362.

As to other instances in which it is held such rights are vested, and can not be taken away, see *McDavid* v. *Adams*, 77 Ill. 155; *Kase* v. *Painter*, 77 id. 543; *Allmond* v. *Brownell*, 76 id. 536; *Harrer et al.* v. *Wallner*, 80 id. 197; *Westervelt* v. *Gregg*, 2 Kern. 202.

The homestead having been acquired prior to 1874, can not be claimed against heirs or devisees. *Eggleston* v. *Eggleston*, 72 Ill. 24; *Sontag* v. *Schmisseur*, 76 id. 541.

Mr. ANDREW D. DUFF, for the defendants in error:

A court of equity had no jurisdiction, ejectment and forcible entry affording a plain legal remedy. The premises being occupied adversely, a bill to remove a cloud from the title would not lie. *Hardin* v. *Jones*, 86 Ill. 313; *Gage* v. *Abbott*, 99 id. 366; *Oakley et al.* v. *Hurlbut*, 100 id. 204.

Moore was entitled to an estate of homestead. This estate, when it once attaches, is not lost by the dismemberment of the family. *Kimble* v. *Willis*, 97 Ill. 494. His temporary absence was not an abandonment.

As to the power of the legislature to change the law as to dower, curtesy, etc., before it becomes absolutely vested by death, or even to abolish such estates before they are vested,

see *Noel* v. *Ewing*, 9 Ind. 37; *Strong* v. *Clem*, 12 id. 37; *Logan* v. *Walton*, 12 id. 629; *Sturgis et al.* v. *Ewing*, 18 Ill. 176; Cooley on Const. Lim. 360.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill in equity, brought by Benjamin F. Henson, in the circuit court of Jackson county, against James E. Moore, F. E. Albright, A. R. Pugh, and Wm. S. Murphy. The bill prayed for an account, and that the rights of the complainant in and to the premises described in the bill be ascertained and declared, and that he be decreed to be the sole owner of the lands for life, free from any right or claim of defendant James E. Moore, or any persons claiming under him, and that he and those claiming under him be adjudged and decreed to surrender up to complainant the possession of the premises; that the conveyances from Moore and Albright be set aside; that complainant be put in possession of the premises; that Moore be required to account for rents and profits, and that complainant may have such other and further relief as to equity and good conscience shall appertain, and as shall seem meet. The defendants put in an answer to the bill, a replication was filed, and a hearing had on the evidence in regard to the homestead rights of defendant Moore, and on an agreed statement of facts as to the other matters alleged in the bill.

It appears from the record that Minerva A. Moore died testate, August 30, 1877, seized of fifty-six acres of land adjoining the city of Murphysboro, in Jackson county. She left surviving her a husband, James E. Moore, a brother, three sisters, and the son of one deceased sister and the daughter of another deceased sister, but no children or descendants of children. About twenty acres of the east half of the land was in cultivation, where was situated a dwelling house, which was occupied by the testatrix and her husband at the time of her death. Moore was married to the testatrix

on the 31st day of October, 1869, she being then the owner of the premises. The east half of the land Mrs. Moore devised to her brother, Benjamin F. Henson, for life, and at his death to his children. The west half of the tract of land she devised to her nephew, Benjamin F. Morgan, in fee. To her husband she devised *one ton of hay*, which was in a barn on the premises, but no other property whatever. The will was admitted to probate October 16, 1877, and on the 27th day of the following month James E. Moore filed in the probate court his written renunciation of the will, and his election to take under the statute. It also appears that at the time of the death of Mrs. Moore, complainant was in the possession of the premises under an unexpired lease; that Moore, in October, 1877, recovered a judgment before a justice of the peace, against complainant, for possession of the premises; that an appeal was taken, but Moore, under a statute then in force, obtained a writ of possession, and was put in the possession of the premises.

It is claimed by plaintiff in error that as the homestead was acquired prior to the act of 1874, which exempts a homestead from the laws of descent and devise, the husband could not claim an estate of homestead in the property. We do not regard it as a material question when the property became a homestead. The husband's homestead rights must be determined by the law in force at the death of the wife. The first section of the Homestead act in force at that time, in express terms exempts the homestead from the laws of conveyance, descent and devise. Under this statute, which must control, the wife had no power to devise the homestead to another, and thus deprive the husband of that estate.

It is also said the husband had abandoned the homestead before the death of the wife. It is true the evidence shows that some difficulty arose between the husband and wife, prior to her death, in consequence of which he was absent for a short time, but he returned after his wife was taken

sick, and was living with her on the property when she died. We do not think this temporary absence would deprive him of any right which the statute gives him. There was, in our judgment, no such abandonment of the homestead as would preclude him from claiming the estate.

On the trial of the cause the court held that James E. Moore was entitled to dower in the lands owned by the wife at the time of her death, and having renounced the provisions of the will, under section 12 of the Dower act he was entitled to one-half of the lands in fee. This decision is claimed to be erroneous. Mrs. Moore owned the lands at the time she was married, in 1869, and it is true that under the statute then in force the husband was not entitled to dower in the wife's real estate, and had she died without any change in the statute he could not claim dower in her lands. But section 1 of the Dower act declares that the estate of curtesy is abolished, and the surviving husband and wife shall be endowed of the third part of all the lands whereof the deceased husband or wife was seized of an estate of inheritance at any time during the marriage, unless the same shall have been relinquished in a legal form. Section 12 of the same act declares: "If a husband or wife die testate, leaving no child or descendants of a child, the surviving husband or wife may, if he or she elect, have, in lieu of dower, * * * one-half of all the real and personal estate" which shall remain after the payment of debts.

Had Moore, by the marriage, acquired any vested estate in the lands of his wife, it may be that the legislature could not have deprived him of that estate; but such was not the case, nor is that the question presented by this record. The question is, whether the legislature had the power to so change the law as to invest the husband or wife with an estate or interest in lands which they did not possess at the time of marriage,—or, in other words, has the legislature no power to regulate curtesy, inchoate dower, or any mere ex-

pectant interest, except as to lands acquired and marriages solemnized after the law is enacted. The statute to-day provides, that where a person dies intestate, seized of lands, the same shall descend to his children in equal parts. Suppose that A has one thousand acres of land, and five children, under the statute, should he now die, the lands would descend in equal parts to all the children. But the legislature has the power to provide, at its next session, that the fee of these lands shall descend to the wife of A, and thus deprive the children of any right that they may now have in expectancy *to* these lands. The right of dower which a wife may have in the estate of the husband before his death, is one which may be changed in such manner as the legislature may think for the best interests of the people. It may be entirely abolished, or it may be enlarged. The same is true in regard to the dower rights of a husband in his wife's lands. It is always subject to legislative change until it becomes a vested estate,—that is, until the wife or husband dies,—then the land passes according to the law then in force, and any change afterwards made in the law can not have any bearing on the rights of the parties. As was held in *Sturgis* v. *Ewing,* 18 Ill. 176: "A party who acquires property does not acquire with it the right to devise such property according to the law as it exists at the time he acquires it. Wills and testaments, rights of inheritance and succession, are all of them creatures of the civil or municipal law, and the law relating to or regulating any of them may be changed at the will of the legislature. But no change in the law made after the death of the testator or intestate will affect rights which became vested in the devisee, heir or representative by such death."

Cooley, in his work on Constitutional Limitations, (10th ed.) 447, in discussing the husband's right as tenant by the curtesy initiate, says: "While this right remains in expectancy, merely,—that is to say, until it becomes initiate,—the

legislature must have full right to modify, or even abolish it. And the same rule will apply to the case of dower, though the difference in the requisites of the two estates is such that the inchoate right to dower does not become property, or anything more than a mere expectancy, at any time before it is consummated by the husband's death. In neither of these cases does the marriage alone give a vested right,— it gives only a capacity to acquire a right. The same remark may be made regarding the husband's expectant interest in the after-acquired personalty of the wife. It is subject to any changes in the law made before his right becomes vested by the acquisition." On page 445 it is also said: "And it is because a mere expectation of property in the future is not considered a vested right, that the rules of descent are held subject to change in their application to all estates not already passed to the heir by the death of the owner."

Under the statute, we think there can be no doubt that James E. Moore was entitled to dower in his wife's lands, and having renounced the provisions of the will in the mode provided by law, and having elected to take under the statute, he became seized in fee of an equal undivided one-half of the lands owned by the wife at the time she died.

The court, however, on the hearing, dismissed the bill, and it is contended by complainant, conceding that Moore was entitled to an undivided half of the premises, a decree should have been rendered settling the rights of the parties. It appears that Moore and his grantee had for several years been in possession of the premises, and had received all of the rents. One object of the bill was to require an account, and it is a clear proposition that equity has jurisdiction in actions between co-tenants for an accounting. (Story's Eq. Jur. sec. 466.) We are of opinion that the bill should have been retained, and an account stated between the parties, and as all the facts relating to the title to the lands were before the court, no good reason is perceived why the bill should not

have been amended, and a partition of the lands decreed. Equity and justice would seem to require that the rights of all the parties should be settled in the proceeding, without requiring the complainant to commence a new suit.

We are therefore of opinion that equity requires that the decree should be reversed, and the cause remanded, with leave to the complainant to amend his bill, making Benjamin T. Morgan, to whom the west half of the premises was devised, a defendant, and for such other and further amendment as will authorize a decree of partition of the premises between the different owners, as their rights may appear from the evidence.

*Decree reversed.*