AUGUSTA S. BILLINGS *v.* THE PEOPLE,

and

CORNELIUS K. G. BILLINGS *et al. v.* THE PEOPLE.

*Opinion filed February 20, 1901—Rehearing denied April 4, 1901.*

1. INHERITANCE TAX—*term "intestate laws" construed.* The term "intestate laws," used in section 1 of the Inheritance Tax law, providing for such tax upon all property which shall pass "by will or by the intestate laws of this State," means those laws of the State which govern the devolution of estates of persons dying intestate, and includes all applicable rules of the common law in force in this State.

2. SAME—*when rule that a widow accepting provision of will in lieu of dower takes as a purchaser does not apply.* The rule that a widow who accepts the provisions of the will in her behalf in lieu of dower takes as a purchaser, is not applicable, as between the widow and the State, in determining whether the property falls within a general class, upon the right of succession to which a tax is imposed for public revenue.

3. SAME—*widow's dower is subject to inheritance tax.* If the widow renounces the provisions of the will and elects to take dower, her dower is subject to the provisions of the Inheritance Tax law.

4. SAME—*all life estates are not exempt from inheritance tax.* The only life estates exempt from inheritance tax under section 2 of the Inheritance Tax law are those to a father, mother, husband, wife, brother, sister, widow of the son, or a lineal descendant, where the remainder is given to a collateral heir of the decedent, or to a stranger in the blood, or a body politic or corporate.

5. SAME—*distinction between remainders to lineal and collateral heirs is not arbitrary.* While section 2 of the Inheritance Tax law makes life estates subject to tax where the remainder is to lineal heirs but exempts such estates where remainder is to collateral heirs, it does not arbitrarily discriminate against members of a class.

6. SAME—*expectant estates are taxable under the statute.* Under the Inheritance Tax law, expectant estates are taxable whether they are in the nature of reversions or remainders and whether vested or contingent.

7. SAME—*when collection of inheritance tax must be postponed.* In administering the Inheritance Tax law it is necessary to postpone the assessing and collection of the tax upon such remote and contingent interests as are incapable of valuation, and as to which the rate of tax and the exemption cannot be determined owing to the uncertainty as to the class to which the party succeeding to the estate may belong.

APPEAL from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

WINSTON & MEAGHER, (FREDERICK S. WINSTON, and JAMES F. MEAGHER, of counsel,) for appellants.

E. C. AKIN, Attorney General, and JULIUS A. JOHNSON, County Attorney, (FRANK L. SHEPARD, ROBERT S. ILES, C. A. HILL, and B. D. MONROE, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Albert M. Billings died testate in Chicago February 7, 1897, leaving a large estate. He left surviving him, Augusta S. Billings, his widow, and Cornelius K. G. Billings, his son, (who was married and had two children,) and Albert M. Billings Ruddock, a minor grandson, who was the son of a deceased daughter, who had intermarried with Charles H. Ruddock. He left also a son by a former marriage, Henry A. Billings. These were his only heirs. The first clause of his will was as follows: "I give unto and bequeath to my beloved wife, Augusta S. Billings, for her use and benefit during her natural life, (and at her death to be divided as hereinafter set forth,) my entire estate, both real and personal, wherever located, excepting such reservations as are hereinafter set forth and made." Then followed devises of certain real estate to his said son Cornelius, and his grandson, Albert M. Billings Ruddock, and certain annuities to his son Henry A. Billings, and to his sister. The will then provided as follows: "I do also herein give and bequeath to my son Cornelius Kingsley Garrison Billings, and to my grandson, Albert M. Billings Ruddock, to be held and owned by them at the death of my wife, Augusta S. Billings, as is hereinafter explained and set forth, all the property and estate herein bequeathed to her, my wife, not otherwise disposed of by my said executors hereinafter named, in the manner following, to-wit: Two-thirds thereof to

my son C. K. G. Billings, and one-third thereof to my grandson, Albert M. Billings Ruddock, to be held and owned by them, as above stated, during their lifetime; and should my son C. K. G. Billings die not leaving a living child or children of his own issue, the property herein bequeathed to him shall revert and be held and owned by my grandchild, Albert M. Billings Ruddock, during his lifetime, and should my grandson, Albert M. Billings Ruddock, die not leaving a child or children of his own issue, then all the property and estate herein bequeathed to him shall revert and become the property and estate of my brother, John D. Billings, (should he be alive at that time,) and my living nephews and nieces who shall be living at the time of the death of my said grandson, as aforesaid, said brother, nieces and nephews to share and share alike in said estate. I hereby make, constitute and appoint my dear wife, Augusta S. Billings, and my dear son Cornelius Kingsley Garrison Billings, and my dear son-in-law, Charles H. Ruddock, to be the sole executors of this my last will and testament."

The widow renounced the provision made for her in the will and elected to take her dower and legal share in the estate under the statute. The county court appointed an appraiser to fix the fair market value of the estate for the purpose of assessing the inheritance tax, as provided by an act entitled "An act to tax gifts, legacies and inheritances in certain cases and to provide for the collection of the same," approved June 15, 1895. (Hurd's Stat. 1899, p. 1460.) The widow's dower, award and one-third of the personalty were appraised at the total sum of $2,363,151.75, the tax upon which, after deducting the $20,000 exemption, was fixed at $23,443.53. The life interest (as it was decreed to be) of said Cornelius in the two-thirds bequeathed to him was appraised at $2,472,-118.75, and after deducting his exemption of $20,000 the tax to be paid by him was assessed at $24,821.18. This included the specific devise of real estate valued at $30,000.

The life interest of Albert M. Billings Ruddock in the one-third interest bequeathed to him was appraised at $1,408,374.77, and after deducting his exemption of $20,000 his tax was assessed at $14,043.74. This included also the tax on a specific devise to him of real estate valued at $16,000. The court, in approving the appraiser's report, found that Cornelius K. G. Billings took a life estate in the two-thirds of the residuary estate bequeathed to him, and that there was a remainder therein of the value, at the testator's death, of $864,584.70, which had not vested, and that there was a remainder in the one-third bequeathed to Albert M. Billings Ruddock for life, of the value of $250,976.95, which had not vested, and ordered that the tax on these remainders be postponed until they shall have become vested. The said Augusta S. Billings alone, and said Cornelius K. G. Billings and Albert M. Billings Ruddock together, have appealed from the order and decree assessing and fixing the amount of said tax. The two appeals will be considered together as one case.

The widow having renounced the life estate given her by the will in the whole estate, the estates given to the son Cornelius and the grandson, Albert, were severally accelerated, and they became entitled at once to their several interests without waiting until the death of the widow. (*Blatchford* v. *Newberry,* 99 Ill. 11.) But we shall consider first the objections to the tax interposed by the widow, Augusta S. Billings, on her appeal.

It will be seen by reference to the first section of the statute taxing inheritances, that the tax is confined to property "which shall pass by will or by the intestate laws of this State," (Hurd's Stat. 1899, p. 1460,) and it was contended below, and is contended here, that the property which came to the widow by reason of the death of her husband and of her renunciation did not pass from him either by will or the intestate laws of the State, and was not, therefore, subject to the tax. The total sum of $2,363,151.75 fixed as the value of the property which

passed to the widow, was made up of $13,070 for her award, $69,266.70 for her dower, and the balance for her one-third of the personalty. It must, of course, be conceded that no part of this property passed to her on the death of Mr. Billings by his will, for she renounced the provision made for her in the will, and therefore became entitled to the same share or interest in the estate that she would have been entitled to if her husband had died intestate. Section 1 of the statute relating to dower (Hurd's Stat. 1899, p. 657,) provides that "the surviving husband or wife shall be endowed of the one-third part of all of the lands whereof the deceased husband or wife was seized of an estate of inheritance, at any time during the marriage, unless the same shall have been relinquished in legal form." And section 10 of the act provides that "any devise of land, or estate therein, or any other provision made by the will of a deceased husband or wife for a surviving wife or husband, shall, unless otherwise expressed in the will, bar the dower of such survivor in the lands of the deceased, unless such survivor shall elect to and does renounce the benefit of such devise or other provision, in which case he or she shall be entitled to dower in the lands and to one-third of the personal estate, after the payment of all debts." Section 1 of the act in regard to the descent of property (Hurd's Stat. 1899, p. 652,) provides "that estates, both real and personal, of residents and non-resident proprietors in this State dying intestate, or whose estates or any part thereof shall be deemed and taken as intestate estate, after all just debts and claims against such estates are fully paid, shall descend to and be distributed in manner following, to-wit: * * * *Fourth*—When there is a widow or a surviving husband, and also a child or children or descendants of such child or children of the intestate, the widow or surviving husband shall receive, as his or her absolute personal estate, one-third of all the personal estate of the intestate."

The widow's award is provided for by the act in regard to the administration of estates. It is true, as contended, that the legal institution of dower is of great antiquity, and was not created by our statute but was fully established and provided for by the common law. Still, it is also true that it may be, and has been, not only recognized but also modified and regulated by statute. The estate by the curtesy also existed by the common law, but it has been abolished in this State and the surviving husband given the right of dower in lieu of it, and no one doubts the legislature had the power to change or abolish the estate by the curtesy. Nor can it be doubted that the institution of dower is subject to full legislative control, and may be modified or changed at any time before it has become a vested estate by the death of the spouse owning the land. (*Henson* v. *Moore*, 104 Ill. 403; *Best* v. *Jenks*, 123 id. 447; *Randall* v. *Kreiger*, 23 Wall. 148; *McNeer* v. *McNeer*, 142 Ill. 388.) True, the husband cannot deprive his wife of her inchoate right of dower, but the State may. She does not hold by contract, but holds by laws which the State may change.

It is contended, however, that whatever the power of the legislature may be to control dower or to impose burdens upon it, the act imposing a tax upon inheritances, when strictly construed, as it should be, does not include dower, because, it is said, dower does not "pass by the intestate laws of this State," and the act does not, by any necessary terms, include dower. There are no laws of this State which are specifically designated as "intestate laws," and we are called upon to determine what laws or system of laws were referred to under that appellation by the act in question. The same term is employed in similar statutes in other States, and we have no doubt the laws referred to are those laws of the State which govern the devolution of estates of persons dying intestate, and include all applicable rules of the common law in force in this State. The statutes from which we

have above quoted are intestate laws, and they govern, regulate and control the interest which the widow, Augusta S. Billings, took in her husband's property at his death. As a general rule, the property of persons dying passes in two ways,—that is, by will, or by descent in the modes provided by law; and when it does not pass by will it generally passes by law,—that is, by the law governing the disposition of property of persons dying intestate.

Counsel for Mrs. Billings contend that had she taken the provision made for her by the will she would have taken as purchaser, and not as a devisee or legatee; that the provision in the will was a mere offer of the testator to purchase, for the benefit of his estate, her legal share in the estate which he could not otherwise eliminate, and that had she accepted she would have stood in the position of a purchaser for value and would not have been subject to the succession tax. In support of this view reference is made to *Carper* v. *Crowl*, 149 Ill. 465, and authorities there cited, and others, where it is said that "a provision by will in lieu of dower is, in fact and legal effect, a mere offer by the testator to purchase out the dower interest for the benefit of his estate." "Her relinquishment of dower forms a valuable consideration for the testamentary gifts. In this point of view she becomes· a purchaser of the property left to her by the will." This doctrine need not be questioned here. It is often applied in adjusting the equities of the widow, heirs and others succeeding to the estates of deceased persons. But we cannot agree to the view that it is applicable against the State, where the question is not only one of power of the State to tax her succession to such an estate, but of the interpretation of a statute designed to exercise such power and to make the tax uniform in its operation. In a certain sense, and in her relation to the testator and those claiming under him, she may well be regarded as a purchaser, and the will and her accept-· ance a matter of contract or convention between them,

by which she becomes entitled to the property and her rights thereto protected. But the question here is not one having reference to the adjustment of the equitable rights of different persons succeeding to the property of a deceased person, but one arising between the claimant and the State,—that is, whether or not the property falls within a general class upon which, or upon the succession to which, a tax is imposed for public revenue. The statute is comprehensive, and was designed to embrace, as nearly as practicable, all property passing from a person, upon his death, by will or intestacy, except such as the statute exempts. This is manifest from the following of the first section: "All property, real, personal and mixed, which shall pass by will or by the intestate laws of this State from any person who may die seized or possessed of the same while a resident of this State, or, if decedent was not a resident of this State at the time of his death, which property or any part thereof shall be within this State or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor or bargainor or intended to take effect, in possession or enjoyment after such death, to any person or persons or to any body politic or corporate in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled in possession or expectation to any property or income thereof, shall be and is subject to a tax at the rate hereinafter specified to be paid to the treasurer of the proper county, for the use of the State; and all heirs, legatees and devisees, administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed. When the beneficial interests to any property or income therefrom shall pass to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of the son or the husband of the daughter or any child or children

adopted as such in conformity with the laws of the State of Illinois or to any person to whom the deceased, for not less than ten years prior to death, stood in the acknowledged relation of a parent, or to any lineal descendant born in lawful wedlock; in every such case the rate of tax shall be one dollar on every hundred dollars of the clear market value of such property received by each person and at and after the same rate for every less amount, provided that any estate which may be valued at a less sum than $20,000 shall not be subject to any such duty or taxes; and the tax is to be levied in above cases only upon the excess of $20,000 received by each person."

It will be noticed that neither dower, nor any provision made in lieu of dower, is exempted, but that the wife is entitled to an exemption of $20,000,—and this the widow received the benefit of in this case. We would expect to find in such a statute, as we do find, that the classes of property would be defined only in general language. If appellants' contention were sustained, it would seem that there would have been no necessity of an exemption in the statute for the wife, for whether she accepts the provision made for her in the will or renounces it, or whether there is a will or not, her interests, according to appellants' argument, are exempt, for the reason that if she accepts she takes by purchase and not by will, and if she renounces, or in case there is no will, she takes in her own right at common law, as widow, and not under the intestate laws of the State. The argument, therefore, proves too much, and amounts to a claim that the widow cannot be taxed at all. In the case at bar the will gave the whole estate to the widow for life, and it is contended she could have taken this life estate in the whole as purchaser, and without liability to the burden of tax imposed on other life estates. If this be so, it might be pertinent to inquire whether it would not follow that Mr. Billings could have devised and bequeathed his whole estate to his wife absolutely, free from taxa-

tion under the statute. We cannot accept appellants' view, and think it unnecessary to pursue this question further. The county court properly held that the widow's dower was subject to the tax.

Counsel on both sides seem to agree that, subject to the widow's dower, and after her award and one-third of the property were set off to her, Cornelius K. G. Billings was entitled to and took two-thirds of the estate for life and Albert M. Billings. Ruddock one-third for life, and the only point made on the appeal by these appellants is, that under the statute these life estates, which were so adjudged and held by the court below to be liable to the tax, were not, under the statute, liable at all. It is not denied that by section 1, standing alone, above quoted, they would be liable, but it is claimed that by section 2 they are excluded from the provisions of section 1. Section 2, or so much of it as affects this question, is as follows: "When any person shall bequeath or devise any property or interest therein or income therefrom to mother, father, husband, wife, brother and sister, the widow of the son or a lineal descendant during the life or for a term of years or remainder to the collateral heir of the decedent, or to the stranger in blood or to the body politic or corporate at their decease, or on the expiration of such term, the said life estate or estates for a term of years shall not be subject to any tax and the property so passing shall be appraised immediately after the death at what was the fair market value thereof at the time of the death of the decedent in the manner hereinafter provided, and after deducting therefrom the value of said life estate, or term of years, the tax transcribed by this act on the remainder shall be immediately due and payable to the treasurer of the proper county, and, together with the interests thereon, shall be and remain a lien on said property until the same is paid."

The point made is, that by the express terms of this section all life estates are exempted from the tax im-

169—31

posed by section 1, whether the remainder be to lineals or collaterals. But we have held that the proper reading of the clause, "or remainder to the collateral heir," etc., should be read "*and* remainder," etc., (*Ayers* v. *Chicago Title and Trust Co.* 187 Ill. 42,) and that the meaning of that provision is, that when the bequest is to the mother, father, husband, wife, brother and sister, widow of the son, or a lineal descendant, during the life or for a term of years, *and* remainder to the collateral heir of the decedent or to the stranger in blood, etc., such estate for life or for a term of years shall not be subject to any tax, but that where the remainder is to lineals the prior estate would, under section 1, be subject to the tax.

But it is contended that this construction renders the statute unconstitutional, under both the State and the Federal constitutions; that it violates section 2 of article 2 of the constitution of this State, which provides that "no person shall be deprived of life, liberty or property without due process of law," and section 1 of article 9, because the law imposing the tax is not "uniform as to the class upon which it operates," and the first section of the fourteenth amendment to the constitution of the United States, which provides "that no State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The constitutionality of the statute has been established by the decisions in several cases, (*Kochersperger* v. *Drake*, 167 Ill. 122, *Ayers* v. *Chicago Title and Trust Co. supra*, *Magoun* v. *Illinois Trust and Savings Bank*, 170 U. S. 283,) and we shall consider only the question whether, by the classification made, there was any arbitrary or unwarranted discrimination between life tenants by the statute imposing the tax.

It is said that the statute discriminates between life tenants with remainder to lineal descendants and life tenants with remainder to collateral heirs, by imposing

the tax on the first and excluding the second from its operation. But we cannot see that this is a mere arbitrary exaction from one class while another class, which cannot be differentiated from it, is allowed to go untaxed. A life estate with the fee descending in the lineal line might well be more desirable than a life estate with remainder to collateral heirs or strangers to the blood. At any rate, there is a sufficient difference upon which the legislature could, without transcending its power, base a classification. It may be observed that as to the rate of tax to be imposed and the amount of the exemption the beneficiaries are divided by the first section into three classes, which, for purposes of designation, may be called,—first, the lineals; second, the collaterals; and third, the strangers to the blood. It is not questioned in this case that these differences in relationship to the decedent have been properly used by the legislature as a just and legal basis for purposes of classification, and although the constitutionality of the statute has heretofore been attacked because of such classification, it has been sustained by this court and by the Supreme Court of the United States. (*Kochersperger* v. *Drake*, 167 Ill. 122; *Magoun* v. *Illinois Trust and Savings Bank*, 170 U. S. 283.) Now, to exempt, by the second section, beneficiaries of the first class who are given only a life estate with remainder over to beneficiaries of the second or third class, is to apply the same principle of discrimination in favor of those standing nearest in relationship to the deceased owner. No life tenant falling within the second or third class is exempt, and the mere fact that life tenants of the first class, where the remainder is kept in the lineal line, are not included in the exemption does not render the statute unconstitutional for lack of uniformity as to the class upon which it operates, as supposed by counsel. Section 2 does not interfere with the classification made by section 1, but recognizes it, and excludes only from the operation of that section life tenants who are bene-

ficiaries of the first class where the remainder is given to those of the second or third class,—that is, to collateral heirs or strangers to the blood, or the body politic or corporate. It cannot be said, we think, that no reason whatever appears for the distinction made by this exemption. It may be regarded as a concession—a further exemption— to beneficiaries of the first class who are the last of their line to hold and enjoy the property; and even if it were one which the legislature had no power to make, that provision only would be void, leaving the rest of the act in full force. And such a construction would not affect the order of court appealed from nor aid appellants in their contention.

The most serious questions in the case arise on the cross-errors assigned, that the court erred in postponing the assessments of the tax on the remainder created by the will upon the termination of the life estates. The court below, and counsel in this court on both sides, have treated the interest of Cornelius K. G. Billings as only a life estate in two-thirds of the property left after the widow had received her portion, and the interest of Albert M. Billings Ruddock as only a life estate in the other third, and for the purposes of this case we shall treat the view so agreed upon as correct, and consider only whether the contingent remainders created by the will are presently taxable, or, rather, whether the taxes are presently payable. The court below held that they were not, but that decision was rendered before this court had decided the case of *Ayers* v. *Chicago Title and Trust Co. supra,* in which case we held that where property was devised to a trustee for the use of his wife and children during their lives, and after the death of all of them the remainder to be distributed according to the intestate laws of the State, both the life estates and the remainder. were taxable upon the death of the testator. It was also held in that case, that expectant estates were taxable by the plain provisions of the statute, whether such ex-

pectancies were in the nature of reversions or remainders and whether vested or contingent.

All such interests are certainly taxable, as said in that case, but the language there used must be construed with reference to the questions there presented. In that case the whole estate was by the will given to the trustee to manage and control, invest and re-invest, and to pay over and distribute the net income to and among the wife and children of the testator and the survivor of them, provided, however, that the children and descendants of those dying should enjoy their parents' or ancestor's share during the continuance of the trust, but that upon the death of the last survivor,—that is, of the wife and children of the testator,—the whole of the trust fund remaining was to go and be set apart and divided by the trustee to and between such persons as should be entitled thereto under the statute in regard to intestate estates; and the county court had decided in that case that no part of the succession tax, either on the life interests or the remainders, could be presently ascertained or collected. We reversed that decision, for it was clearly erroneous, and in doing so used language applicable to the case, and to all cases where the property or interest passing is capable of valuation and the amounts of the tax and of the exemptions are capable presently of determination. In the *Ayers case* the county court postponed the entire tax, holding that no part of it could then be fixed or collected. In this that court was in error. But in the case at bar the county court not only caused the estates to be appraised which passed to the widow, to the son Cornelius for his life, and to the grandson Albert for his life, and the tax to be assessed, but also, under section 2, caused to be appraised that part of the estate which had not vested and which cannot vest until the happening of the contingencies mentioned in the will, and postponed only the tax thereon until the same shall have become capable of being fixed and collected. In

this we think the court below decided correctly, because
as to those remainders or so-called reversionary interests
they were incapable of valuation, and in such a case the
literal language of the statute must give way to reason-
able interpretation. Manifestly, it cannot be determined
now whether the son Cornelius will die leaving children
or a child surviving him or not, and hence it cannot now
be determined whether the grandson, Albert, will take
a life estate or not, on the death of Cornelius, in the two-
thirds bequeathed to him for life, or, if Cornelius' chil-
dren should not survive him, neither may Albert, and in
such case there would be no life estate remaining in said
two-thirds after the death of Cornelius. How, then, can
any such life estate be now valued or the tax thereon be
fixed or collected? Treating the estate of Cornelius as
a life estate only, the will seems to make no bequest or
devise over in case he should survive Albert and die leav-
ing no child of his own issue surviving him. How could
this possible reversionary interest be now valued and
taxed? Questions practically as difficult of solution would
arise as to the remainder of the one-third bequeathed to
Albert. By what rule or recognized table could it be de-
termined whether he will marry and have children who
will survive him? If he shall, there will be no remain-
der over to the collaterals,—the uncle, the nephews and
nieces; if he shall not, there will be. How can estates
depending upon such contingencies be valued and taxed
at the rates provided by the statutes? It is to be borne
in mind that the tax is levied on the succession and not
on the property as such, and the rate and the exemptions
must be determined by the succession, and it would seem
to follow, necessarily, that when the basis of the tax can
not be fixed the tax itself cannot be fixed. It is, however,
made a lien on the property, which will continue until
the uncertainties change to certainties, as they will in
time, when it may be collected.

We find upon examining the authorities that the courts of last resort in other States have found it necessary to take substantially the same view in interpreting statutes similar to the one under consideration. Among many cases, see *In re Roosevelt's Estate,* 143 N. Y. 120, and *In re Hoffman's Estate,* id. 327.

The tax imposed by section 1 of our statute is fixed upon the "clear market value of the property received by each person" at the prescribed rate,—that is, as shown by the context, the clear market value of the beneficial interest so received. Surely, by such language it was not intended by the legislature that the courts should undertake to ascertain the clear market value of a mere possible interest which, from its very nature, could not have any market value, and which, for all practical purposes, such as taxation, is incapable of valuation. The courts, in order to enforce the immediate collection of such taxes, as the statute seems to contemplate shall be done, cannot change the tax from one on succession to one on property; nor can they classify such remote and contingent interests, and fix the tax or rate of tax upon the whole class, as possibly the law-making power might do or provide for. No other course is left open in the practical administration of the statute than to postpone, as was done in this case, the assessing and collecting of the tax upon such remote and contingent interests as are incapable of valuation and as to which the rate and the exemptions cannot be determined. It is apparent that in many cases the tax on remainders, mentioned in section 2 as becoming immediately due and payable, can be immediately ascertained and collected; but in other cases, while, in contemplation of the statute, they are due and payable and remain a lien on the property, their payment cannot be enforced until the amount can be determined by the happening of the event or fulfillment of the conditions upon which the beneficial estate itself is made to depend. This construction of the statute leads

to its broadest, fairest and fullest enforcement, while to so construe it as to require the fixing and collection of the tax, immediately upon the death of the donor, upon all interests in property passing or to pass upon any contingency, would embarrass, and for practical purposes might have the effect to defeat, the full operation the statute was intended to have.

We are of the opinion that the case was correctly decided by the county court. The order and judgment of that court will therefore be affirmed.

*Judgment affirmed.*