## SHARE OF WIDOW, ELECTING NOT TO TAKE UNDER WILL, IN PERSONAL ESTATE OF HUSBAND IS TAXABLE AS A SUCCESSION.

Common Pleas Court of Hamilton County.

### IN RE ESTATE OF ALBERT LACKMAN.

Decided, April, 1927.

*Inheritance Taxes—Levied on Succession to Property—Effect of Election Not to Take Under Will—Distributive Share In Personal Estate Is a Succession—Dower Interest Not a Succession Because Fixed at Time of Marriage—Section 8592 an Intestate Law.*

1. Inheritance taxes are excise taxes on the privilege of succession.
2. All taxation laws are to be strictly construed against the state and their meaning is not to be extended by implication beyond the clear import of the language used.
3. When a widow makes an election not to take under the will of her husband, in accordance with provisions of Section 10571, General Code, she is entitled to the estate she would have taken had the husband died intestate leaving children.
4. The intestate laws are those laws which provide for and prescribe the devolution of estates of persons who die without disposing of their property by will.
5. Section 8592, General Code, providing for the distribution of personal estates of persons dying intestate, is an intestate law, notwithstanding it was enacted as a part of the Husband and Wife Act of 1887 (84 O. L., 132); nor is it any the less an intestate law because in certain cases it is dependent for its operation on Section 10571, General Code, which allows the widow to make an election.
6. Where a widow has elected, under the provisions of Section 10571, General Code, not to take under the will of her husband, she *succeeds* by virtue of the intestate laws to her distributive share in her husband's personal property, and such succession is taxable under Section 5332, General Code.
7. Dower is exempted from inheritance taxes because it is a property right that vests in the spouse at the time of marriage, subject to divestment only by her own act or by operation of law, and therefore there is no succession to the real estate after the death of the husband, within the meaning of the inheritance tax statutes.
8. While a spouse cannot dispose of his personal estate with intent to defraud any one, either his wife or his creditors, the wife has no interest in the property that will prevent him from disposing of any part or all of it in a *bona fide* transaction at any time before his death, and it is only upon his death that her right to a distributive share in such estate becomes fixed.

*Dolle, O'Donnell, Geisler & Cash,* for appellants.

*Chas. P. Taft, II,* Prosecuting Attorney, *Augustus Beall,* Asst. Prosecuting Attorney, *Herbert F. Koch,* Asst. Prosecuting Attorney, for the Tax Commission.

SHOOK, J.

This cause comes into this court on appeal by Emma Perll Lackman, widow of Albert Lackman, deceased, from a decision by the Probate Court of Hamilton county, Ohio.

The widow having elected not to take under the will of Albert Lackman, deceased, the court found that her dower, amounting to $45,979.72, was exempt from inheritance tax. The court further found, however, that her share of the personalty of the estate of Albert Lackman, deceased, amounting to $71,523.53, was subject to inheritance tax, under the laws of the state of Ohio.

So far as we have been able to learn, this is a case of first impression. Counsel seem to be of the same opinion, as no authorities directly in point, in Ohio, have been submitted. Counsel have been most diligent and courteous in assisting the court in the search for authorities, and in an attempt to arrive at a proper solution of the important and rather complex propositions involved.

Several sections of the General Code are apropos. Section 10571 reads as follows:

"*Election to be noted; failure to make such election:*

"Whether or not a citation be issued in the manner provided by Section 10566, the widow's or widower's election may be manifested by written instrument signed by such widow or widower, duly acknowledged and filed in the Probate Court within one year from the date of probate of the will of the deceased consort. In case such election is made in person in the manner specified in the preceding section, the same shall be entered upon the minutes of the court. If the widow or widower fails to make such election in person as provided in Section 10570, or by written instrument, as provided herein, within the time limit provided by sections 10567 and 10568, or within the time limit provided in this section, then it shall be deemed that she or he has elected to take under the will and she or he shall be bound accordingly and persons may deal with property of the decedent in accordance therewith; if she or he elects not to take under the will then she or he shall retain the dower, and such share of the personal estate of the deceased consort as she or he respectively would be entitled

to by law in case the deceased consort had died intestate, leaving children."

Section 5332 contains the material part of the so-called Inheritance Tax Laws. That part of the section applicable hereto reads:

*"Property on which tax levied.*

"A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, institution or corporation, in the following cases:

"1. When the succession is by will or by the intestate laws of this state from a person who was a resident of this state at the time of his death."

Section 5331 (2) defines succession:

"'Succession' means the passing of property in possession or enjoyment, present or future."

The general rule seems to be that inheritance taxes are excise taxes on the right or privilege of succession.

Counsel for Albert Lackman's Estate argue with great skill and logic that the widow of Albert Lackman did not acquire the right or privilege to have what is called the distributive share of her husband's estate pass to her either by will or by the intestate laws of the state, but that the right to this estate was acquired at the time of and by reason of her marriage to the decedent.

In arriving at our conclusions we have been careful to circumscribe our opinion by several elementary rules of construction.

1. That all taxation laws are to be strictly construed against the state. *City of Cincinnati* v. *Connor,* 55 O. S., 91:

"The rule generally prevails that, independent of any legislative requirements on the subject, statutes imposing taxes and public burdens of that nature are to be strictly construed and where there is ambiguity which raises a doubt as to the legislative intent, that doubt must be resolved in favor of the subject or citizen on whom the burden is sought to be imposed."

2. The language of the statute is not to be extended by implication beyond the clear import of the language used, and its operation is not to be enlarged in its effects. *In re Matter of Enston,* 113 N. Y., Reports, 174:

Dos Passos on Law of Collateral Inheritance Taxes, etc., 40:

"As taxation is held to be the general rule extending to all species of property, so exemption is the exception to such rule, with the further important qualification that statutes purporting to grant exemption from general taxation are to be strictly construed against the claim. Such exemptions are neither presumed nor allowed unless there appears from the language of the statute or charter to be a clear intention, on the part of the Legislature, to make an exception to the general rule, and where the law is doubtful the court should declare against the exemption.

"Special tax laws, however, are to be construed most strictly against the government and most favorably to the taxpayer, and a citizen can not be subjected to such special burdens without clear warrant of law."

However, applying the foregoing principles of construction, we can not find any ambiguity in the following language from Section 5332, General Code:

"When the succession is by will or by the intestate laws of this state from a person who was a resident of this state at the time of his death."

A simple but complete definition of a person who dies intestate is found in the case of *Goff* v. *Moore,* 11 N. P. 543, at 544:

"A person who dies intestate dies without having made a will."

By intestate laws is meant simply those laws which relate to descent and distribution of estates which provide and prescribe the devolution of estates of persons who die without disposing of their property by last will and testament. (*Kohny, admx.,* v. *Dunbar, etc.,* 21 Idaho Reports, 258.)

It is not subject to controversy apparently, that when Mrs. Lackman made an election not to take under the will, in accordance with Section 10571, General Code, she was entitled to the estate she would have taken had Albert Lackman died intestate leaving children.

The following language in the case of *Geiger* v. *Bitzer,* 80 O. S., 65, at page 74, is applicable:

"Her right (that is, the widow's right) to dower and a distributive share is paramount to the right of her husband to dispose of it only subject to her right, and in the present case he has expressly made it subject to her right. If she does not elect to take under the will her right re-

mains as it would be had he died intestate, leaving children; as to her rights it is as if he had died intestate."

It is argued that Section 8592 is not an intestate law, because: First, this section only becomes operative by reason of Section 10571, which allows the widow to make an election, and secondly, that ·it was not passed as an intestate law, but was a part of the Husband and Wife Act of 1887, which codified the legal relations existing between husband and wife. With reference to the first part of the argument, we deem it sufficient to state that while in this particular case Section 8592 becomes operative, because Mrs. Lackman failed to make her election under the will nevertheless the section would apply to any other circumstances where decedent died intestate in this state. Had Albert Lackman died without leaving a will, the widow would be entitled to the personal estate which was in his possession at the time of his death; therefore section 8592 can be isolated, and in our opinion, it is aside from the point to refer to Section 10571 in order to arrive at a proper conclusion.

With reference to the second point, to-wit, that this can not be an intestate law, because it is a part of the Husband and Wife Act of 1887, a reference to this Act (84 O. L. 132), shows that this is "an act to define the rights and liabilities of husband and wife," and that this particular statute is contained under the special heading— "Descent and Distribution." To use a definition contained in the brief of counsel for the estate of Albert Lackman, this must be an intestate law because "the intestate laws comprise that body of laws which provide and prescribe the devolution of estates of persons who die without disposing of their property by last will and testament."

Upon an examination of Sections 10566 and 10571, which are stressed by counsel for the estate, we can find no confusion for the reason that Section 5332, General Code, *supra,* refers to a *succession* by the intestate laws of this state. Section 10566 provides:

*"Election by Widow or Widower.*—If provision is made for a widow or widower in the will of the deceased consort, after the probate of such will, the probate· court forthwith shall issue a citation to such widow or widower to appear and elect whether to take such provision or to

be endowed of the lands of the deceased consort and take the distributive share of the personal estate."

Section 10571 provides:

"*Election to be noted; failure to make such election—* Whether or not a citation be issued in the manner provided by Section 10566, the widow's or widower's election may be manifested by written instrument signed by such widow or widower, duly acknowledged and filed in the probate court within one year from the date of probate of the will of the deceased consort. In case such election is made in person in the manner specified in the preceding section, the same shall be entered upon the minutes of the court. If the widow or widower fails to make such election in person as provided in Section 10570, or by written instrument as provided herein, within the time limit provided by Sections 10567 and 10568 or within the time limited provided in this section, then it shall be deemed that she or he shall be bound accordingly and persons may deal with property of the decedent in accordance therewith; if she or he elects not to take under the will then she or he shall retain the dower, and such share of the personal estate of the deceased consort as she or he respectively would be entitled to by law in case the deceased consort had died intestate, leaving children."

After all, it seems to us that the correct test to be applied is whether or not decedent had the right to dispose of his personal property during his lifetime. Counsel is apparently contending that by Section 10571, General Code, her right to dower and personal estate is on the same plane. Counsel state in their brief (page 6):

"We think that it may be said, and rightfully said that the death of the husband only determines the time of the accrual of the widow's inchoate right to a share of the personal property, and it is not the event which creates the right."

The complete answer to this contention is, in the opinion of the court, that dower has been exempted from the provisions of the Inheritance Tax Laws by judicial construction. The basis for this exemption is that in the case of dower there is a property right vested in the widow or widower prior to the death, and that therefore there is no succession to the real estate after the death within the meaning of Sections 5331, and 5332, General Code, *supra*. In a word, we hold that the widow takes her share of Al-

bert Lackman's personal property by virtue of Sections 8592 and 10571, and that both of these sections deal with the property which has passed after death, where, within the meaning of the law, decedent dies intestate.

Dower is created by the provisions of Section 8606 of the General Code of Ohio.

*"Of what estate a widow or widower is endowed*:— A widow or widower who has not relinquished or been barred of it, shall be endowed of an estate for life in one-third of all the real property of which the deceased consort was seized as an estate of inheritance at any time during the marriage, in one third of all the real property of which the deceased consort, at decease, held the fee simple in reversion or remainder, and in one-third of all the title or interest that the deceased consort had, at decease, in any real property held by article, bond, or other evidence of claim."

The wife acquired her interest upon marriage, or when the husband acquired title or other interest in the real estate during the marriage. We can find no analogy in the statutes or decisions between dower and distributive share of personal property. By reason of Section 8606, there is a right vested in the husband or wife at the time of marriage, of which neither can be deprived except by their own acts or by operation of law.

We quite agree with the statement of counsel for the Lackman estate (page 7), that the husband "can not dispose of the right of his widow to her distributive share in whatever remains at the time of his death." However, it necessarily follows that he can dispose of the right of his wife at any time before death, and this is the distinction between the dower right and the right in a distributive share of personal property.

We can not agree with the construction of counsel for the estate of Albert Lackman of the case of *Doyle* v. *Doyle*, 50 O. S., 330, to the effect that the husband can not dispose of his personal property during his life time. Of course, it is elementary to say that an owner of property can not dispose of it to defraud any one, whether his wife or his creditors, but there is no element of fraud present in this case, and we do not feel that the Doyle case is in conflict with the conclusion herein.

Syllabus 2 in the Doyle case reads:

"A widow is not deprived of a distributive share of the personal estate of her deceased husband, by his leaving a will in which he disposed of all of it to others, without making any provision for her. As to her, in such case, he is regarded as dying intestate."

There is no statute in Ohio with reference to a distributive share of personal property analogous to Section 8606 fixing dower rights. If the Legislature had intended to vest an interest during the life time of decedent and to fix this right as having been obtained by marriage or after the marriage relationship began, Section 8606 might have included personal property, or some other statute could have governed the situation. In the absence of legislative authority, the court has no right to read something into the statute which is not there, which is, in effect, what is being asked herein.

We construe the language on pages 345 and 346 of the Doyle case in favor of our decision, and not against it, by reason of the concluding sentence:

Their interests being mutual, they participate alike in the gains and losses until death works a separation, when her right to a portion of the personalty subject to distribution, is fixed and ascertained by law, independently of any will he may have made."

Therefore it is clear that this case holds that only personalty which passes after death is involved within the meaning of the law. This is absolutely contrary to the theory that the marriage relationship fixed the status. Effect is given to a distributive shares of the personalty at the time of death and not at the time of marriage or by virtue of the marriage relationship.

The question involved in the case of *Weaver* v. *Gregg.*, 6 O. S., 547, is stated on page 551:

"Dower, then, being a creature of positive law, and as such, subject to legislative modification, limitation and qualification, the question before us is one of legislative intention. Did the general assembly, in providing for the sale of estates in proceedings in partition, intend that the entire estate should pass to the purchaser divested of a wife's inchoate right of dower?"

Concluding at page 553, the court states:

"And when the law steps in and divests the husband of

his seizin, and turns the realty into personalty, she is, by the act and policy of the law, remitted, in lieu of her inchaote right of dower in the realty, to her inchoate right to a distributive share of the personalty into which it has been transmuted."

We do not find any distinction in principle between this case and the analysis of the case of *Doyle* v. *Doyle, supra.*

The case of *Long* v. *Long*, 99 O. S., 330 simply quotes from the case of *Weaves* v. *Gregg*, and is to the same effect.

We quote from the case of *Brodt* v. *Rannalls*, 7 N. P. 79, syllabus 1:

"The husband has absolute dominion over his personal estate during his lifetime, and by a *bona fide* gift *inter vivos* may deprive his widow of any share in the same, and the fact that such gift was made for the purpose of defeating his wife from receiving any part of his personalty upon the settlement of his estate constitutes no fraud upon her marital rights."

The authorities in Ohio are reviewed at great length in this case and it seems to be in line with the general practice and opinion generally to the effect that personal property may be transferred at any time during the lifetime of the owner, with the one exception that it must be accomplieshed without fraud.

In the case of *Miller* v. *Miller*, 16 O. S., 528, we do not find anything in conflict with the conclusion at which we have arrived. This case throws no light, in our opinion, upon the suggestion that the right of a wife attaches to the personal estate prior to the death of her husband. There is no doubt that the husband and wife may enter into a post nuptial agreement whereby, for a consideration, the wife relinquishes her claim to a distributive share of the husband's personal estate in case she survives him. However, this pre-supposes that there will be a succession to personal property; if the husband should die without personal property, the agreement is nullified, because the right attaches upon the happening of the death of the husband, and not at the time of the marriage, nor prior to the death of the husband.

In the case of *Smith* v. *Smith*, 57 O. S., 27, the husband and wife mutually contracted for releasing their right of dower and distributive share in the estate of each other.

The husband died intestate and the question arose as to whether the widow, or the brothers and sisters of the decedent were entitled to the estate. The syllabus shows that the case is not in conflict with our ruling:

"*Held*: That the effect of the language was to give to the husband of the wife the full dominion of his own property, with power to dispose of it by will or otherwise, without the assent of the wife during her life, but did not affect her right to inherit from him as his widow in property of which he died seized."

The case of *Hoagland* v. *Hoagland*, 113 O. S., 228, contains the following language (page 239) in the opinion:

"The interest of an heir is a naked possibility, a mere expectancy of inheritance. But a spouse has an interest in the property of the other, contingent upon survival, which can not be divested by will. In addition, dower is an interest that has a present value which can not be abrogated without consent of the owner. Therein lies the clear distinction between the character of the interest which a spouse may contract to release and that of an ordinary heir. Under the statutes of our state, the law gives to the surviving consort a definite portion of the intestate's property, both real and personal. This right, whether to dower or distributive share, in case of survival, can not be defeated by any will. *Doyle* v. *Doyle, Jr.,* 50 Ohio St., 330, 24 N. E., 165."

This opinion distinguishes the Needles case cited in the brief for the estate and overrules the decision in the case of *McGee* v. *Sigmund*, 109 O. S., 375. The opinion (page 230), cites the case of *Dubois* v. *Coen, Exr.,* 100 O. S., 17. Syllabus 1, in the latter case reads:

"In order to ascertain the meaning of doubtful terms in an act, recourse may be had to the title of the act as an aid in construing such terms. The purpose of the husband and wife act of March 18, 1887 (84 O. L., 132), as shown by its title, was 'To definite the rights and liabilities of husband and wife.' Among other rights and liabilities brought within the scope of the act was the liability of their respective estates to respond to dower and distributive share."

The syllabi in the Hoagland case, *supra*, are are follows:

"1.   Where husband and wife in contemplation of separation, enter into mutual covenants for release of dower

and distributive share, and as part consideration therefor the husband pays the wife the sum of $5,000, which she accepts, and separation occurs pursuant thereto, such contract, if made in accordance with the rules controlling actions of persons occupying confidential relations, is lawfully permitted under Section 8000, General Code.

"2.   Sections 7999 and 8000, General Code, when construed together, permit a husband and wife, contemplating such separation, to enter into an engagement mutually releasing each other's right to dower and distributive share in the other's property; they are also authorized thereby to contract for the future support of either of them and their children during such separation.

"3.   The principle announced in *Needles, Exr.,* v. *Needles,* 7 Ohio St., 433, 70 Am. Dec., 85, that the 'mere expectancy or chance of succession of an heir apparent to his ancestor's estate' is not subject to release at common law, does not apply to a husband or wife's release of their respective claims to dower and distributive share in the property of the other.   (*McGee* v. *Sigmund,* 109 Ohio St., 375, 152 N. E., 576, overruled."

Counsel lays great emphasis upon the case of *In re Rogers,* 250 S. W., 576 (Mo.)

We have made a careful study of this decision in view of the argument of counsel to the effect that he feels that this case is on "all fours" with the case herein.   However, it is our opinion that the statutes of Missouri are clearly distinguishable from the Ohio statutes, and that the case therefore, is not applicable.

Section 321 of the Revised Statutes of Missouri (1919 reads:

*"Husband dying without children; widow, how endowed*: When the husband shall die without any child or other descendants in being, capable of inheriting, his widow shall be entitled: *First* to all the real and personal estate which came to the husband in right of the marriage, and to all the personal property of the husband which came to his possession with the written assent of the wife, remaining undisposed of, absolutely, not subject to the payment of the husband's debts; second, to one-half of the real and personal estate belonging to the husband at the time of his death, absolutely, subject to the payment of the husband's debts. (R. S. 1909, Section 361.)"

It will be seen immediately that the statute places the personal estate on the same plane with the real estate, and also fixes the act of marriage as the basis for the widow

taking the share of the personal property of her husband. There seems to be no distinction drawn between real and personal property.

Furthermore, Section 321 of the Missouri Statutes is under the general heading of "DOWER."

Section 303 of the statutes of Missouri, which is a statute of Descent and Distribution of real and personal property, reads: .

"*Real and Personal Estate Descends, to Whom*:—When any person having any title to any real estate of inheritance, or personal estate undisposed of, or otherwise limited by marriage settlement, shall die intestate as to such estate, it shall descend and be distributed in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following course: First, to his children, or their descendants, in equal parts; second, if there be no children, or their descendants, then to his father, mother, brother and sisters, and their descendants in equal parts; third, if there be no children or their descendants, father, mother, brother or sister, nor their descendants, then to the husband and wife; if there be no husband and wife, then to the grandfather, grandmother, uncles and aunts, and their descendants, in equal parts; fourth, if there be no children or their descendants, father, mother, brother, sister, or their descendants, husband or wife, grandmother, grandfather, uncles, aunts, nor their descendants, then to the great-grandfathers, great-grandmothers, and their descendants, in equal parts; and so on, in other cases, without end, passing to the nearest lineal ancestors and their children and their descendants, in equal parts."

Comparison of these two sections with Section 8592 of the General Code of Ohio, *supra*, and the other sections herein quoted, shows that the language in the opinion of the Rogers case can not be applied as the rule in Ohio in view of the statutory provisions in Ohio.

The following coments on the Missouri statutes may elucidate our analysis:

"The Missouri case deals in its reasoning and decision, solely with real estate. The court holds, at page 579, that the property (real estate), which the widow takes by election, is in fact her "election dower" and has the same characteristics as her statutory dower.

"The Missouri statutes make no provision for election by the widow, so far as personal property goes.

"In Ohio a widow takes a set proportion of personalty if the husband dies intestate. If he leaves a will, she takes

such personalty as the will provides; but if she elects, she may, *instead of the provisions by will* take what she would take if he died intestate leaving children.

"In Missouri, a widow takes, in the personalty, a share equal to a child's share, or if he die childless, one-half. She takes these shares whether he dies testate, or intestate, and in addition, she takes whatever he leaves by will, and whatever she is entitled to under the statutes of descent and distribution.

"If a man dies in Ohio, survived by wife and child, he may leave the widow no personalty whatever, if she elects to take under the will. Under the same circumstances in Missouri, she would take one-half of all his personalty, without regard to whether he left a will or not, and without regard to any action by the widow.

"In Missouri, if a man dies survived only by a widow, and leaving no will, she pays inheritance tax only on one-half of his estate, which she gets under Section 303. The half which she gets under Section 321 is not subject to the tax.

"In Ohio under the same circumstances, she would admittedly pay tax on the entire estate, which she takes under Section 8592."

The decision in the Rogers estate case, supra, criticises the Illinois rule (*Billings* v. *People,* 189 Ill., 472), but an examination of the Illinois statutes discloses that they are more nearly in harmony with the Ohio statutes. We deem it advisable to quote the following general statements of the law to fortify our decision:

Cooley on Taxation (Vol. 4, 4th edition), Section 1723:

"*An Excise Rather than Property Tax.* An inheritance tax is an excise tax, not a property tax. However, a statute may, in name, be one imposing a tax on the right of succession, and, in reality, be one on the property passing. In other words, the title of the legislative act can not always be taken as conclusive of the character of the tax imposed. An inheritance tax is not a tax on property merely because the amount of the tax is made to depend upon the value of the property transmitted, nor because the tax is made a lien on the property the succession of which is taxed."

26 R. C. L., Section 193:—

"*Transfers Taking Effect in Possession after Death of Grantor.*—When property is conveyed by its owner to a trustee in trust to pay the income to the grantor for his life and on his death to distribute the fund among the grantor's heirs at law, the property comes to the heirs by virtue of the laws regulating intestate succession and is subject to the inheritance tax on that ground. If, however,

property was conveyed to a trustee to pay over the same to a specified person upon the death of the grantor, it would not pass by will or by the laws regulating intestate succession, and would escape taxation under a statute applying only to transfers of such a character, and the same would be true of a conveyance of the remainder on a piece of real estate after a life estate reserved in the grantor. To avoid such an easy method of evading the inheritance tax, the tax has been extended by the laws of many of the states to cover property conveyed by land, grant, or gift intended to take effect in possession or enjoyment after the death of the grantor. Under such a statute the tax can not be evaded by any device intended to reserve to the transferor of property the income, profit or enjoyment of the transferred property until his death; the transfer, to be without the statute, must be such as to pass the possession, title and enjoyment of the property during the transferor's lifetime. A transfer is subject to the tax although it is absolute on its face, if the transferee by a separate agreement entered into contemporaneously or by previous arrangement binds himself to pay the transferor the income from the property during the transferor's life. So also when a decedent made a gift of his property during his life, under an agreement by which the donee obligated himself to pay interest on the amount of the gift during the life of the donor, the whole property is subject to the inheritance tax upon the death of the donor."

A very fine annotation under the heading "Succession or Estate Tax in its Application to Dower and Statutory Allowances," is to be found in 37 A. L. R., at pages 541 to 547.

Likewise the case of *A. B. Hempton, Admr.* v. *L. A. Hempton*, 221 S. W., 491 (Kentucky), also reported in 10 A. L. R., page 515, is an application of the Federal Estate Tax. With reference to what extent it applies to personalty, of course, is not strictly in point, but some of the principles involved and decisions cited have been of interest to the court in arriving at its conclusion.

Therefore, it is the opinion of the court that the widow of Albert Lackman, deceased, succeeded to his personal estate by the intestate laws of this state from her husband, Albert Lackman, deceased, who was a resident of this state at the time of his death.

Therefore, the ruling of the Probate Court of Hamilton County, Ohio, should be, and it hereby is, affirmed.