In regard to the second, the petitioner called several witnesses who stated that for some time previous to its execution William A. Norwood had been greatly addicted to drinking, and was habitually intemperate, and that his mind was thereby impaired; and his family physician stated that some two or three months previous to the execution he had received a severe blow on the head, which had affected his mind; that since that time he had given himself up to drinking; that for some time before the deed was executed his mind, when he awoke in the morning, was much wanting in energy, and incapable of business; but that after taking a moderate portion of stimulus his powers rallied and he became fully possessed of his understanding, and continued capable of transacting business unless (which was generally the case, and was the case the evening before the deed was executed) he continued to drink, in which event he became in the afternoon incapable of business again from intoxication. Upon cross-examination, this witness stated that he saw Norwood the morning the deed was executed and just before its execution, and that he was then in possession (581) of his reason and capable of transacting business.
The petitioner's counsel then offered to call witnesses to prove the said Norwood's "declarations connected with his conduct" the day succeeding that on which the deed was executed, in order that the jury might, from these, with his previous conduct, etc., infer that he was non compos on the day of the execution of the deed. To this evidence the defendant's counsel objected, and the court sustained the objection and excluded the testimony.
The defendant then called the two subscribing witnesses to the deed, who testified that they had been long and intimately acquainted with William A. Norwood; that he had been, for some months previous to the execution, much addicted to intoxication, but that, except when drunk, his mind was quite adequate to the proper transaction of business; that when the deed was executed he was not drunk, but fully possessed of his understanding; that the deed was read to him, and he fully understood its purpose before its execution. *Page 458 
The defendant then called Richard Sneed, one of the trustees named in the deed. To this witness the petitioner's counsel objected as incompetent on the score of interest; and the witness, in answer to questions put by the petitioner's counsel, stated that he had accepted and acted under the deed — sold and conveyed the property, and paid the debts, having, with the other trustees, first retained and applied to his own use the commissions given by the deed; and thereupon the counsel insisted that though the witness had not joined in any warranty or covenant against encumbrances to the defendant Marrow, yet, by accepting the trust, and acting in its execution, he had rendered himself liable to actions, and was interested to support the deed. His Honor overruled the objection and allowed the witness to be examined. This witness testified that he had long been a neighbor of and well acquainted with the said Norwood; that Norwood had been for some time very much involved in debt, though possessed of considerable real and personal (582) estate; that some weeks before the deed was made he was asked by Norwood to act as his agent, with Robert Jenkins, his brother-in-law, and Edward Norwood, his son, for selling his property, or as much of it as would satisfy his debts; that it was the wish of both himself and his wife (the petitioner) that the tract of land in controversy should first be sold in order, if possible, to save the negroes; that in consequence of this application the witness, with Jenkins and Edward Norwood, had, before the execution of the deed, contracted with the defendant Marrow for the sale of the land; that it was then concluded to substitute a deed of trust for a power of attorney; upon which the witness drew the deed of 23 February, 1836, according to the instructions of William A. Norwood, who fully understood its provisions, which were well known to and approved of by his family, including his wife, the petitioner, and Edward, his son; and that the said William A. Norwood executed it while in the full possession of his faculties; that a chief object of the deed was to relieve the land of the encumbrance of the debt to Duty, secured by the deed of 28 September, 1835; and that on the day after the execution of the deed of 23 February the defendant Marrow, in the presence of all the trustees therein named, paid and discharged the Duty debt, paid the residue of the purchase-money to the trustees, and was put into possession of the premises. Robert Jenkins was then called by the defendant, and after being objected to by the petitioner's counsel for the same reasons which they had urged against the admissibility of Sneed, was admitted, and gave testimony of the same import as that given by Sneed.
The petitioner's counsel then asked the judge to instruct the jury that if the evidence given by James R. Duty respecting the deed of 28 September, 1835, was true, that deed was absolutely void as against the *Page 459 
petitioner, notwithstanding the facts deposed by Sneed and Jenkins should be true also; which instruction the judge gave as prayed for.
The petitioner's counsel then having proved that William A. Norwood died on 28 February, 1836, before the probate of the deed of 23 February, which was on 11 March, and its registration, which was on 2 April following, insisted that the widow was, as to (583) her right of dower, a creditor within the meaning of the first section of the act of 1829, ch. 20; 1 Rev. Stat., ch. 37, sec. 24; and prayed his Honor to instruct the jury that although the said deed was executed by the said William A. Norwood when in full possession of his mental capacity, so as to pass the title and seizin out of him as against himself and his heirs from the execution thereof, yet that, as against the petitioner, the same took effect only from its registration; and that being after the death of the said Norwood, he died seized thereof, so as to entitle the petitioner to dower, which instruction his Honor refused to give. There was a verdict and judgment for the defendant, and the petitioner, after an ineffectual motion for a new trial, appealed.
The issue, as joined in the record, is in the most general form that is admissible: Whether the late husband of the petitioner was at his death seized or possessed of the land in which the dower is claimed? But upon the trial the defendant offered in evidence two deeds in particular, made by the husband, and insisted that one or the other of them transferred the fee and seizin from the husband; admitting at the same time, if that was not the effect of those deeds, that the plaintiff's husband did die seized.
The court held that one of those deeds, that to Duty, was void as against the petitioner, and that she was entitled to a verdict upon the issue, notwithstanding that deed. This point having been thus ruled in favor of the petitioner, would not ordinarily be a subject for reconsideration in this Court, as our attention is more properly given to such errors as are alleged by the party who appeals. But in the present instance the case embraces all the facts in relation to that deed as well as to the other, upon the idea that if that deed to Duty be legally a bar to the petitioner, the errors in respect to the second deed, if there be any, become immaterial; and consequently that the verdict and judgment ought not to be disturbed, as upon the whole case they are right. Atkinson (584)v. Clarke, 3 Dev. Rep., 171. There cannot, therefore, be avenire de novo, unless the decision upon that deed be right, and also the decision upon some of the points made respecting *Page 460 
the other deed be wrong. It is become thence the duty of this Court to examine the deed of 28 September, 1835.
We are of opinion that the determination of his Honor upon the trial, in respect to the first conveyance, is well founded. In Shober v.Hauser, ante, 91, it was held, upon full deliberation, that an instrument of this kind, affected with usury, is void against the bargainor. It did not, therefore, divest the seizin of the husband; but upon his death the land, but for the other deed, would have descended to the heir. It is said, however, that a stranger cannot impeach the deed on that ground, and that the bargainor, or his heir alone, can take advantage of it; and it is thence inferred that it is not competent to the widow to allege this objection, but that she must await the action of the heir to regain the possession from one holding adversely upon a claim under this deed. But we deem that inference unfounded, and that the contrary is the law. By the statute, the widow is dowable of all land of which her husband died seized. If the seizin remained in the husband, after he executed the deed, on account of its being void, then he did die seized, and her title to dower was perfect. Indeed, the very terms in which the issue between these parties is couched show that the material inquiry is whether the husband died seized; if he did, that is decisive of the wife's right. Nor is it true that the wife gets her dower necessarily through the heir. She claims paramount the heir. It is true, indeed, that she cannot enter until assignment made; and that in point of tenure, for feudal reasons, she holds of the heir or of the person in whom is the reversion of the land assigned for dower. But, in point of title, her estate does not arise or take effect out of the ownership of the heir or other person making the assignment, but is considered a continuation of that of the husband; and although between the death of the husband and the assignment of dower a seizin of the heir or another person intervenes, yet upon the assignment she is in by relation from (585) the death of the husband, for "the law adjudgeth no mesne seizin between the husband and wife." Perkins, s. 424; Co. Lit., 241. She does not require the assistance of the heir, but brings her action against any person who has the freehold, whether that be the heir or any other. Co. Lit., 38. She may sue a disseizor, abator or intruder; and hence those persons, although having the freehold by wrong, may assign her dower, and thereby bind those who have the right. Co. Lit., 35 a, 357 b. That this must be so is evident when it is recollected that at common law the wife was entitled to dower in all land of which her husband was seized at any time during the coverture; and that his conveyance did not defeat her right. Consequently she was entitled when the heir had nothing in the land; and therefore she was obliged to assert the right for herself. It is true, that is not so in this State *Page 461 
except in cases of conveyances in fraud, or devises in prejudice, of the wife, because dower is only of land of which the husband died seized; and if he was seized for the purpose of dower, he was also for that of descent. Still the laches of the heir cannot hurt the widow, but she may recover against him who has the freehold, whether derived or usurped from the heir. If the husband had made a voidable alienation, and had not avoided it during his life, there would be no title of dower, because he had not the seizin at his death. But if the deed be void, the seizin remained in the husband, and the right of dower attached thereto. Machel v. Clarke, 2 Ld. Ray., 778; Salk., 619; 11 Mod., 19; Blitheman v. Blitheman, Cro. Eliz., 279.
If our opinion were different on the point that has been considered, we should yet hold that deed not to be a bar in this action, because it is not competent to the defendant, on this issue, to show a title out of the plaintiff's husband and in a third person. It is so settled in New York.Hitchcock v. Carpenter, 9 John. Rep., 344; Hitchcock v. Harrington, 6 John. Rep., 290; Collins v. Torry, 7 John. Rep., 278. It must follow as one of the numerous examples of the rule long established in this Court, that where both parties claim under the same person the title of that person is not to be disputed between them, unless one of them can show a better title in himself. Love v. Gates, ante, 498, (586) at the present term. That the defendant did not show in this case, for the release from Duty to the defendant was subsequent to this suit, and also to the defendant's plea. Had the widow continued in possession, and had been sued in ejectment by the present defendant, she could not have set up a title in Duty to defeat the subsequent deed under which Marrow claims, but would have been bound by the estoppel which bound the husband. Buffalow v. Newsom, 1 Dev. Rep., 208. Estoppels being mutual, the defendant must also be precluded from setting up that title against the widow; and as the defendant did not plead that deed, the plaintiff could not reply the estoppel, and so may avail herself of it on the evidence.
The deed to Duty being thus out of the plaintiff's way, the case depends upon the sufficiency of the objections applicable to the deed of February, 1836.
One of these objections is that as the deed was not registered until after the husband died, it left the seizin in him at his death, and thereto the title of dower attached. But it has been established doctrine from an early period that by relation a bargain and sale after enrollment operates as well for the advantage and disadvantage of the wife as of the husband and his heir. Thus, if a bargain and sale be made to a man, and he dies, and then the deed is enrolled, his wife ought to be endowed; for the fee is in the bargainee by relation, and all the consequences of a *Page 462 
seizin in fee from the date of the deed must follow. Gilb. Uses, 292;Vaughan v. Atkins, 5 Bur., 2765. On the other hand, although the title of dower arose to the plaintiff upon the death of her husband, yet by the subsequent registration of the deed it became in its legal operation an alienation in his lifetime, and therefore before the title of the wife accrued. Shepherd's Touchstone states this case: If A bargain and sell his land to B in fee and then marry C and die, and C be endowed, and afterwards the deed is enrolled, the dower of the woman shall be taken away by relation, as was held in Baron Trevill's case, 22 Eliz. Touch., 226; Cro. Car., 217, 569.
It is further objected that as this is a deed of trust there is, by the words of the act of 1829, ch. 20; 1 Rev. Stat., ch. 37, sec. 24, no (587) relation back, and that the deed does not pass any property but from the registration. But this is only true in respect of creditors and purchasers; and the wife is neither a creditor nor a purchaser in our opinion. There is no contract between husband and wife for curtesy or dower. The interest the one gets in the property of the other the law gives for the encouragement of matrimony. We have so held in respect to the husband's right to his wife's chattels. Logan v. Simmons, 1 Dev. Bat., 13. All the old authorities say that the tenant by curtesy is in the post, that is, by operation of law. Co. Lit., 30 b, note 7. They are not so well agreed about the wife; some supposing that she is in by the husband or in the per by force of the marriage agreement; and others that she, like the husband, takes by force of the general law. Co. Lit., 30 b, note 7; 239 a; 7 Rep., 73. Perhaps the doubt arose from the several kinds of dower, for those ad ostium ecclesiae and ex assensu patris arose out of an agreement of a nature similar to that for jointure in modern times. But it is difficult to distinguish dower at the common law and curtesy as to their origin. But however the argument may be pursued upon the abstruse point of the old law, how the wife is in, technically speaking, it is certain that such as her estate is, the law makes it without any act of the husband, and even against his will. She claims therefore under the statute which defines her right of dower, and has made no contract with the husband which constitutes her a purchaser or a creditor.
Another exception is to the admission of Sneed and the other trustee as witnesses. They were called by the defendant to prove the capacity of the bargainor, and thereby support the deed under which they acted, and have claimed and retained a commission. We do not perceive any interest of those persons in this suit, although they probably harbor a strong bias on the point to which they testify. They are not to have a commission on what may be recovered in this suit; but they have already acted and been paid, and have conveyed without covenants or *Page 463 
responsibility. They have therefore no interest in the cause, nor can the verdict and judgment be given in evidence for them, and those are now the tests of competency. It is said they may be compelled to (588) refund the money now in their hands, if Marrow loses the land by reason of the invalidity of the deed. It is not certain they would be obliged to refund in the event supposed. But if it be admitted, still this verdict would not be evidence against them of the want of capacity in their bargainor, but it would be necessary to establish the fact by other proof. Our opinion, therefore, is that those were competent witnesses.
Upon the remaining point, we must say that it seems to us the evidence offered of the bargainor's declarations, connected with his conduct the next day, was relevant and proper. When the inquiry is whether a particular malady, mental or corporeal, existed at a particular time, its existence previously and just up to the period, and its existence also just afterwards, furnished together the strongest presumption that the disease was seated in the system at the given period. it is the practice on every circuit to give such evidence in actions on warranties of soundness. It cannot, then, be denied that the plaintiff might prove her husband's defect of intellect the next day after he made the deed. The only question is as to the mode of proof. We think the proper mode must be by showing such facts as are ordinarily regarded as indicia
of a sound or of a disordered or decayed reason. These are the appearance, the department, the conversation, and the acts of the person. It would have been more satisfactory if the exception had set forth the particular language and conduct of the husband which it was proposed to prove. For, certainly, he might say and do many things that would not be competent. If he said that he had no recollection of making the deed, that he was drunk and had been imposed on, or the like, we should think that his Honor properly excluded evidence of the declarations; for, if admitted, that would be to impeach a deed by subsequent declarations, as importing truth in themselves, instead of laying before the jury the conversations of the person upon subjects generally, and not on this particular transaction only, as denoting not imposition merely, but, with other things, as denoting a want of understanding to make a bargain. From the nature of the investigation before the jury any (589) wild, incoherent, or irrational opinions, narrations, imaginations or contracts, or the acts or behavior of the party, generally, must of necessity be considered. But only such can be heard as indicate that at the time of making them the person was insane and not those which purport to be assertions of the person that he was not sane at the time of doing a certain act. It is true, even madness is sometimes simulated, *Page 464 
and many a common man may be unable to detect the imposition. But it is not more difficult to do so after the transaction than at or before it; and at each period the judgment is formed upon the same species of evidence. From the risk of deception by the person whose interest it may be to stultify himself, and from the inability of many men to appreciate properly what passes before them, as evidence of sanity or insanity, the evidence of the kind we are speaking of may frequently be entitled to but little weight. Perhaps that might have been the case here; for, from the nature of this person's case the evidence of his state next day would have but faintly reflected back on his condition at the execution of the deed, unless the evidence related to corresponding hours of each day, and unless the quantum of stimulus and the period of taking it should also turn out to be alike on both days. But the weight must necessarily be estimated by the jury. We do not think that such evidence is so entirely without weight, or so suspicious that none ought to be heard. On the contrary, if a witness was, for example, with the person all the second day, and described his treatment to be such as ought to have roused his dormant faculties on that day, if it did on that previous, and yet should be believed when he stated that it had no such effect, but that the party was throughout lethargic, stupid, or delirious; it could not be denied that either the veracity or the judgment of those who testified to his state when he made the deed would be materially discredited.
Against this we are not aware of anything, unless it be the case of theState v. Scott, 1 Hawks, 24. We own that our minds are not satisfied with the reasoning in the opinion; and indeed we are not certain that it is correctly understood by us. But this may be distinguished (590) from that case; and therefore in coming to the decision we have we do not overrule Scott's case. In the first place, although the exception there stated, that the prisoner offered his declarations "in connection with his conduct," yet Judge Henderson's opinion clearly treats the question as if it concerned declarations by themselves; which he said a majority of the court though were not evidence unless they accompanied acts, though his inclination was the other way. Perhaps, therefore, the decision may be attributed to the Courts' not adverting to the circumstance that evidence of conduct as well as of words was offered. But there is another difference between the cases. There, no ground was laid for any suspicion of previous insanity; so that the subsequent exhibition of it for but a day, might have been rejected upon a presumption that it must be simulated. Here, the object is to show that the same marks of an enfeebled mind existed afterwards as unquestionably had, during portions at least of each day, for a considerable period before the execution of the deed. We think that such evidence must be received, *Page 465 
because evidence of that description is all that the nature of the case admits of, and therefore that the judgment must be reversed and another trial had.
PER CURIAM. Judgment reversed.
Cited: McGee v. McGee, 26 N.C. 109; Costin v. Baxter, 29 N.C. 114;Copeland v. Sauls, 46 N.C. 73; Spivey v. Jones, 82 N.C. 181; Barnett v.Barnett, 54 N.C. 225; Harding v. Barrett, 51 N.C. 162; Love v. McLure,99 N.C. 295; Edwards v. Dickinson, 102 N.C. 523; Black v. Justice,86 N.C. 513; Brown v. Morisey, 124 N.C. 294, 298; Mitchell v. Corpening,id., 477.
(591)