STATE EX REL. CORPORATION COMMISSION ET AL. V. R. A. DUNN AND J. B. BROWN, EXRS., ETC., ET AL.

(Filed 5 December, 1917.)

**1. Taxation—Statutes—Interpretation—Inheritance Tax.**

Laws imposing an inheritance tax are liberally construed to effectuate the intention of the Legislature, and the exemptions to be allowed rest in its power and discretion.

**2. Same—Dower.**

The right to dower in the husband's lands rests upon statute, and does not grow out of the contractual relations of the marriage, and, being in the nature of property which passes "by the intestate laws of this State," is subject to taxation, under chapter 201, section 6, Laws 1913, providing an exemption of $10,000; and the inheritance-tax law of 1911 (chapter 46, section 6) completely exempting such tax, is repealed by this later statute. The origin, history, and nature of the widow's right of dower discussed by CLARK, C. J.

**3. Same—Widow's Dissent.**

Where a widow dissents from her husband's will and claims her dower right in his lands, she takes such interest "as if he had died intestate" (Revisal, sec. 2081), and it is subject to the inheritance tax. Chapter 201, sec. 6, Laws 1913.

ALLEN, J., concurring; WALKER, J., dissenting; HOKE, J., concurring in dissenting opinion of WALKER, J.

APPEAL by plaintiffs from *Cline, J.,* at June Term, 1917, of MECK-LENBURG.

Peter Marshall Brown died in May, 1913. His widow, Daisybel P. Brown, dissented from her husband's will and was allotted for her dower lands valued at $65,850, besides $2,000 cash as her year's allowance. She was married to Peter Marshall Brown in 1905 and was 34 years old at the time of his death. The present value of her dower, based on the tables of expectancy, is $56,222.78. The inheritance tax on all the other property of the said P. M. Brown, deceased, including the remainder after the dower, has been paid by the executors, but no tax has been paid on said $56,222.78, nor on the $2,000 year's allowance, and this action is to recover the 1 per cent inheritance tax on said sums, less $10,000 exemption allowed to the widow by the statute.

By consent, the court found the facts as above stated, and directed a nonsuit. From this judgment the State appealed.

*Attorney General, Assistant Attorney General, R. H. Sykes, and George W. Wilson for plaintiffs.*
*Pharr & Bell for defendants.*

CLARK, C. J. The case presents the single question, whether the dower and year's allowance which, under our statute, accrue to a widow upon her husband's death intestate, or upon dissent to his will, are subject to the inheritance tax, under section 6, chapter 201, Laws 1913. That section reads as follows: "From and after the passage of this act, all real and personal property, of whatever kind and nature, *which shall pass by will or by the intestate laws of this State* from any person who may die seized or possessed of the same while a resident of this state . . . shall be,

and hereby is, made subject to a tax for the benefit of the State, as follows" (here follows the details).

Whether an inheritance tax shall be laid or not, and the rate thereof, and the exemptions allowed, are matters which rest in the power and discretion of the law-making department. "Laws imposing the inheritance tax must be liberally construed to effectuate the intention of the Legislature." *Norris v. Durfey,* 168 N. C., 321. This statute allows an exemption from the inheritance tax in favor of adult children of $2,000; in favor of minor children, $5,000; and in favor of the widow, $10,000. Prior to this act, it would seem that the widow's dower was exempt from taxation. The insertion in this statute of the following: "*Provided,* a widow shall be entitled to an exemption of $10,000, and each child under 21 years of age to an exemption of $5,000," is a clearly expressed intention that all above $10,000 of the property which passes to the widow, whether by will or on intestacy, shall be subject to the inheritance tax. The intent of the Legislature is as clear as its power. No property of which the husband was seized and possessed can pass to the widow except by will or under the intestate laws of the State.

The suggestion that dower is vested in the widow by virtue of the contract of marriage, and passes by such contract, and not by law, cannot be sustained. The authorities may be said to be uniform against this position. In 9 R. C. L., p. 563, it is said, under the head of "Dower," sec. 5: "*Positive Law, Not Contract, as Basis.*—In our law, the right to dower is not regarded as springing from contract, although the contract of marriage is a prerequisite to its existence, but from the positive terms of the common law or statute law. Its existence and incidents are therefore determined by the law of the State in which the real estate lies—not by that of the place of the marriage or the domicile of the parties, and likewise by the law *existing when the estate becomes consummate by the husband's death, instead of by that in force at the time of the marriage or at the time of the acquisition of the real estate by the husband.* The constitutional questions raised by changes of law made while rights of dower are inchoate are discussed elsewhere." The reference, "elsewhere," is to section 8, which states that "It is also the rule that the wife's expectation of dower—that is, her inchoate right of dower—even after the husband has become seized of particular real estate, is not a vested right, within the protection of the constitutional provision," citing numerous authorities.

In 14 Cyc., 882, it is said: "Dower is inchoate after seizin of the husband and during coverture, and consummate after the death of the husband." On page 885 it is said: "Although there is early authority to the contrary, it must now be regarded as settled that dower is not the result of any contract between husband and wife, either express or

implied. But it is an institution of the State, founded upon public policy and made by positive law an incident of the marriage relation." On page 925 it is said: "An inchoate right of dower is not an estate, nor is it an interest in real estate."

In *Norwood v. Morrow,* 20 N. C., 578, *Ruffin, C. J.,* says: "There is no contract between husband and wife for curtesy or dower. The interest one gets in the property of the other, the law gives for the encouragement of matrimony. It is certain that such as her estate (dower) is, the law makes it without any act of her husband and against his will." To same purport, *Rose v. Rose,* 63 N. C., 391. That dower is not a part of the contract of marriage, but is an estate arising and passing by operation of law, is well settled, both in this country and in England. In 2 Scribner on Dower, 2, the result of the English authorities is thus given: "It will be observed that this estate arises solely by operation of law, and not by force of any contract, express or implied, between the parties; it is the silent effect of the relation entered into by them, not as in itself incidental to the relation or as implied by the marriage contract, but merely as that contract calls into operation the positive institutions of the municipal law."

Blackstone and Littleton speak of five species of dower, which had been gradually evolved from the variant customs as to dower prevailing in different parts of England, but these from time to time have been dropped or abolished, except what is known as "dower by the common law," which is defined as "one-third part of all the lands and tenements of which the husband was seized in fee simple or fee tail at any time during the coverture, and of which any issue which she might have had might by possibility have been heir, to be held by the wife for the term of her natural life." This was abolished in this State in 1784 and was not restored till 1868. It is not so generally known that it was abolished, and more completely in England, in 1834, and has remained so. The only dower there existent for the last eighty-three years has been dower in one-third of the real estate of which the husband died seized and possessed, subject, however, to the right of the husband by will to bar even this.

In fact, dower at common law has not only been thus abolished in England, but it exists unchanged by statute hardly anywhere. 14 Cyc., 883, says: "In many of the United States, dower, exactly or substantially as it existed at common law, has been recognized as in force or adopted by judicial declaration or by express constitution or statutory provisions, while in others it has been very materially changed by statute. In other States, dower has been abolished altogether and a different right or interest substituted, as, for example, a certain portion of the husband's real property in fee simple, or a certain portion of community property, or both."

CORPORATION COMMISSION *v.* DUNN.

Common-law dower was not only abolished in this State in 1784, and remained so till 1868, but there are many cases in which it can be defeated, which would not be the case if it was based upon an implied contract between husband and wife. It may be defeated by divorce or by felonious slaying of the husband by the wife (Revisal, 2109); by elopement or abandonment (Revisal, 2110); by dissent of widow (Revisal, 3081). The dower of an insane wife may be conveyed by the husband alone (Revisal, 959); and dower may be defeated by mortgage of the husband alone, when for part of purchase money. Revisal, 958 and 3085. It must be seen that while dower is a provision for the widow, by virtue of the statute, out of the property left at her husband's death, it is not a vested right, nor an estate in land, nor is it in any sense based upon an implied contract arising out of the marriage. It is purely statutory, like the laws of devolution of all property upon death, such property being disposed of by the law as to dower, or descent, or by will, according to the statute in force at the time of death of the owner. As has been repeatedly said by this and other courts, when a man dies he has no natural or inherent right to dispose of the property that he leaves behind him. The law-making body as to wills and as to descent, whether to children or widow by way of dower, controls. In *Sutton v. Askew,* 66 N. C., 172, it was held that the Legislature could increase the inchoate right of dower by restoring the common-law right of dower, which gave her dower in all the lands of which the husband was seized and possessed during coverture, but that the Legislature could not thus restrict his power of alienation of lands which he had acquired prior to the passage of the act. There were two dissenting opinions, and the authorities elsewhere are in accord with that view. The majority opinion rested not upon the vested right of the wife, but an assumed vested right of the husband in the *jus disponendi,* which an extension of the dower right would impair, and because it might deprive creditors of their rights. The majority of the Court evidently did not approve the legislative policy of restoring common-law dower. They criticise it as a violation of the husband's rights of property, and say that theretofore there had been but few questions as to dower rights, and none as to inchoate dower rights, but that the act of 1868-'69 "involves the subject in much uncertainty and will breed much litigation." *Judges Dick* and *Rodman,* in their dissenting opinion, say, correctly: "The history of the common law shows that dower was always regarded as a municipal institution and was not the result of a contract."

Dower, as known to the common law, was purely an English regulation, which has been abolished there since 1834, and was abolished here for nearly a hundred years. Dower is now hardly the same in any two jurisdictions. In Biblical times, "dowry," as when Shechem solicited Jacob

CORPORATION COMMISSION *v.* DUNN.

for his daughter, Dinah, in marriage, "Ask me never so much dowry and I will give it" (Gen. 24 : 12), bore no resemblance to the "dower" of the common·law, but was a gift, made by the suitor to the father or other near relatives of the intended bride. A similar custom prevailed among the Greeks, but Aristotle states that it had come to be looked upon as a relic of barbarism in their ancestors, as it was virtually a purchase of their wives. Neither is it like the dower, called *"dos,"* of the Roman law (or the *"dot,"* still in France), which was the marriage portion which the wife brought to her husband, in land or money. 1 Scribner on Dower, 2, 3. It may be noted that the French *"dot"* (pronounced *"doe"*), with its attraction to foreign suitors of American heiresses, is the origin of the slang word, "dough," for property.·

The Chief Justiciar, *Glanville,* in the first English law book, about 1175, said that if no dower was announced at the church door, the wife took one-third; subject, however, to the disposal of the husband, by deed or will, later; for, said he, "Since the wife herself is in a legal sense under the absolute power of her husband, it is not singular if the dower as well as the woman herself should be considered fully at the disposal of the husband, who may give away or alienate the dower in his lifetime." He adds that, if the promise at the church door is of more than a third, though the husband does not alienate it, the wife cannot take more, but if he promises less, she gets only that. The second English law book, by *Bracton,* about a century later, repeats this, and gives as the reason because the woman has no vested interest in the dower before it is assigned, and "because she cannot gainsay her husband."

Law books in those days came about a century apart and were in manuscript, for it was some centuries yet before printing was invented. Indeed, Littleton, in his work on "Tenures," doubts if the first work named was written by *Chief Justiciar Glanville,* because he was not "in orders," and attributes it to *Glanville's* nephew, Hubert Walter (who was a bishop and later Archbishop of Canterbury and Chief Justiciar), for in those days very few could read or write, except those who were in orders, and there were no lawyers till more than a hundred years after *Glanville's* time. Consequently, most of the judges were bishops or priests, with a few laymen.

Dower, in fact and in law, is neither a vested right in the wife, nor is the husband or wife beyond the power of the Legislature to change it at will. It is simply the provision which the law makes for the support of the widow out of the husband's estate after his death, and is controlled, like all the other laws of descent and distribution, by the statute in force at the time of his death.

Dower, therefore, being a provision out of the husband's estate which is allotted to her for her support in case of intestacy, or when she dis-

sents from the provision made for her in her husband's will, is necessarily "property which passes by will or by the intestate laws of this State." Revisal, 3081.

In this case, if the widow had been content with the provision made for her in her husband's will, it would have been subject to the inheritance tax. It is none the less so because dissatisfied with the amount thereof she dissented, and under proceedings provided by law she has received a larger sum in lieu thereof. Whether she took it by will or under dissent, which gave her the same share "as if he had died intestate," it is property which passed to her from her husband "by will or by the intestate laws of the State." The Legislature has seen fit to tax it in either event, subject to an exemption of $10,000. It cannot be that if she took by will it was taxable, but if dissenting she took an allotment of the same amount which she would have received if he "had died intestate" that the property is exempt from taxation.

Revisal, 3081, provides that upon a dissent, "The widow shall have the same rights and estate in the real and personal property of the husband *as if he had died intestate.*" There are numerous decisions that the words, "dying intestate," is not limited to the ordinary meaning of one dying without making a will, but includes death of a person without effectually disposing of the property. *In re Cameron,* 62 N. Y. Supp., 187, and many other cases.

The identical question here presented was passed upon in a very able opinion (*Billings v. People,* 189 Ill., 472; *S. c.,* 59 L. R. A., 807), which holds: "The words, 'intestate laws,' in a statute imposing a transfer tax upon property passing by the intestate laws of the State, refer to the laws which govern the devolution of estates of persons dying intestate, including applicable rules of the common law which are in force, so that the tax will be applicable to a widow's dower interest and her award under the administration laws." It was again presented in the same State in a recent case (1910) in the settlement of the estate of Marshal Field [*People v. Field,* 248 Ill., 147; 33 L. R. A. (N. S.), 230], where it was held: "A sum provided by antenuptial agreement to be paid the wife in case of her surviving the husband, in lieu of all claims and rights which she might otherwise have upon her husband's estate as his widow, is subject to succession tax." The *Billings case, supra,* was taken on writ of error to the United States Supreme Court (188 U. S., 97) and was affirmed, the Court holding: "Inheritance-tax laws are based upon the power of a State over testate and intestate dispositions of property to limit and create estates and to impose conditions upon their transfer or devolution. This Court has already decided in regard to this law that such power could be exercised by distinguishing between the lineal and collateral relatives of a testator. Whether the amount of tax depends

upon him who immediately receives, or upon him who ultimately receives, makes no difference with the power of the State." In short, the Court sustained the legislative power to tax inheritances, whether testate or intestate, and at different rates, on the passage of the inheritance to different classes of devisees or distributees, including in that case the widow. To same purport, *In re Morris,* 138 N. C., 260, a very interesting and learned opinion by *Mr. Justice Brown.* In *S. v. Scales,* 172 N. C., 915, *Allen, J.,* says: "Our inheritance-tax laws show an advancing tendency to include all property and to decrease exemptions, and should be liberally construed, to the end that all property coming within their provisions may fairly and reasonably be taxed." *Walker, J.,* says, *In re Inheritance Tax,* 172 N. C., 170, that "The obvious intent of the State is to tax every interest passing by will to persons not exempt"; and though that case held that an annuity bequeathed to a widow was exempt from taxation, it was because of the language of the act of 1909, which did not extend to the taxation of widows. This has now been changed, as we have seen by the act of 1913, which, after taxing all property of every kind of a decedent passing by will or by law to another, exempts as to the widow $10,000 only.

The inheritance-tax law of 1911 (chapter 46, section 6) contains this exemption: *"Provided,* that all legacies and property passing by will *or* by laws of this State to a husband or wife of the person died possessed as aforesaid . . . shall be exempt from tax or tax duty." In 1913 the Legislature changed this by substituting for it a tax on all property of a decedent of every kind, whether passing by will or intestacy, *"Provided,* the widow shall be entitled to the exemption of $10,000." The whole subject of inheritance taxation has been discussed in the admirable opinion by *Brown, J., In re Morris,* 138 N. C., 259, where he says: "The statute must be given a liberal construction to effectuate the intention of the Legislature"; and to the same effect, *Norris v. Durfey,* 168 N. C., 321, and *S. v. Scales,* 172 N. C., 915, in which *Allen, J.,* gives a valuable synopsis and history of the inheritance-tax law in this State.

The Legislature necessarily intended to tax the widow's share of the estate of the deceased, because, after taxing all property of every kind, it gives among the exemptions one of $10,000 to widows. It would be manifestly unjust to tax them if they take under the will, but to exempt them entirely if they take contrary to the will by dissenting.

The taxing power is the life of the State. The existence of all governments depends upon its exercise, and all property and all rights of devolution or transfer of property are liable to be taxed at the will of the lawmaking body, and subject to change by it, except where there is a prohibition in that respect in the State Constitution, and there is nothing in the Constitution of North Carolina which forbids the Legislature to tax

the transfer of the property of the decedent, whether it goes by will or in case of intestacy, or upon dissent of the widow she receives her share under proceedings at law for its allotment in such cases, "as in cases of intestacy." Revisal, 3081.

Reversed.

ALLEN, J., concurring: The Laws of 1917 provide that all real and personal property "which should pass by will or by the intestate laws of this State" shall be subject to the inheritance tax.

The dower of the widow does not pass by will, and is not therefore taxable under the statute, unless it comes within the meaning of the phrase, "intestate laws of this State."

The authorities from other States hold almost unanimously that dower does not pass by the intestate laws, but the decisions are based on the language and history of the statutes in the several States, and in each the Court was endeavoring to perform the duty, now imposed on us, of determining the intent and purpose of the General Assembly when it laid the tax on property passing by the intestate laws. The history of inheritance taxes is outlined in *S. v. Scales,* 172 N. C., 916, and we then adopted a liberal construction of the statutes, "to the end of taxing all property fairly and reasonably coming within their provisions," and we also said, after giving a statement of legislation on the subject:

"This statement of legislation upon the subject in this State shows an advancing tendency to include all property, to decrease exemptions, and to maintain a distinct classification of persons, the lineal descendant, lineal ancestor, husband and wife being in the most favored class, and the stranger and the corporation in the class subject to the highest tax."

Having in view these principles, what did the General Assembly of this State mean when it said, "which shall pass by will or by the intestate laws of this State"?

When a man dies he leaves a will or dies intestate, and, as ordinarily understood, stripped of technicality, all of his property must pass either by will or by the intestate laws, the latter expression being used as the equivalent of "or as in case of intestacy."

The history of legislation on the subject, and the changes made by the act of 1913, which have since been retained in the statutes, sustain this construction.

In the act of 1911, after saying that all real and personal property passing by will or by the intestate laws of the State shall be subject to the inheritance tax, there is provision that all legacies or property "passing by will or laws of this State to husband or wife" shall be exempt, which clearly exempted dower, because it passes by the "laws of this State."

This provision was omitted from the act of 1913, and in lieu thereof the widow is given an exemption of $10,000.

Why did the General Assembly of 1911 insert a proviso having the effect to exempt dower if the Legislature thought dower was already exempt because not passing by the intestate laws of the State?

Why make the change in the act of 1913 and strike down a section in the act of 1911 which exempted dower, if the Legislature still intended dower to be exempt? Why give the widow an exemption of $10,000, and no more, if in addition she was to have her dower free from taxation?

It is not dower that is the favorite of the law, but the widow, and under the construction we give the statute she has an exemption of $10,000, when a child's exemption, if under 21, is $5,000, and if over, $2,000, and the husband's nothing, showing that she retains her favored position.

I concur in the opinion of the Chief Justice.

WALKER, J., dissenting: I am unable to agree with my brethren of the majority in this case. I think that much of what has been said by the Court is irrelevant to the question presented in the record. It is unquestionably true that the State has the power to tax all kinds of property and estates therein, because one kind receives as much protection from it as another; and it is just, therefore, that this power should exist, to be exercised when it is expedient to do so, or the interests of the State may require that it should be done. But this is not the question here, but quite another, which is, has the State exercised its sovereign power to tax with respect to dower? I contend that it has not, and did not intend to do so, for if it it did, the language we find in the statute would not have been employed, but something very different. If dower does not pass "by the husband's will or under the intestate laws," it is not taxable, because these are the very words of the statute.

The estate of dower is one of great antiquity, and so much so that it has been difficult to trace its origin; and even Coke and Blackstone and writers of even an earlier period have been baffled in their efforts to find its original source. Coke said that it was certainly the law of England before the Norman conquest that a widow should continue forty days in her husband's mansion after his death, within which time (called her quarantine) her dower was to be assigned her. 2 Blackstone, p. 135; Coke Litt., 32b. And one among our greatest commentators, if not entitled to the first place, has said that it is possible that it might be with us the relic of a Danish custom; since, according to the historians of that country dower was introduced into Denmark by Swein, "the father of our Canute the Great," out of gratitude to the Danish ladies, who sold all their jewels to ransom him when taken prisoner by the Vandals. 2 Blackstone Comm., 129. It has been described as a legal, equitable, and moral

right, favored by the law in a high degree, and with life and liberty, held
to be sacred.  Coke Litt., 124b.  "Dower was, indeed, proverbially the
foster-child of the law, and so highly was it rated in the catalogue of
social rights as to be placed in the same scale of importance with liberty
and life.  *Favorabilia in lege sunt, vita, fiscus, dos, libertas,* was the
maxim in the courts, and is frequently cited by the old text-writers and
reporters."  Park on Dower, 2; Coke Litt., 124b.  It is an institution of
the State, existing by reason of public policy (14 Cyc., 885), and is not
dependent upon the husband's will for its efficacy, but becomes the prop-
erty of the wife, as his widow, in spite of anything he may, say or do.
He has no hand in its making.  It grows out of the marriage, it is true,
and is one of its incidents, but it is not derived from the husband by
descent or devolution of any kind, nor does it come to the widow by his
intestacy—that is the occasion, but not the cause, of it.  It derives its
existence from a law of its own, and not from any laws of intestacy.  The
latter apply when there is devolution or succession from him who dies—
the decedent—but dower vests in the widow not in either way, as it is the
creation of the law and does not emanate from the husband, nor is it
dependent upon his intestacy, except in the sense that it vests in posses-
sion and enjoyment at his death, as a vested remainder does when, under
a will, it takes effect at the expiration of the particular estate.  It may
well be doubted upon high authority whether any intestate laws existed
at the time when dower originated in the very ancient past.  But what-
ever may be said, it is no part of the husband's succession, for she comes
into this estate neither as his heir by inheritance nor as his distributee
by succession or devolution, and does not in any sense take from him, but
against his will.  He may devise her a part of his property in lieu of
dower, but this is not dower, and she does not take as his widow, but as
his devisee.  If she does not dissent, she takes under the will, not dower,
but something else which is a part of his estate and which is taxable,
because she then comes within the letter of the law, as she takes by the
will.  But she may have dower when he dies testate instead of intestate,
as when he makes a will and ignores her entirely.  If this was the case
here, could she be taxable?  She takes not under the will, because she
was left out in the disposition of her husband's property, and she takes
not her dower under any intestate law, because there is no intestacy.
Where the husband wills her property expressly in lieu of dower, if she
does not dissent from the will she is deprived of dower by her election
to take under the will, for neither justice nor the law will permit her to
take both under and against the will—in consistent benefits.  Again, a
person always takes, under intestate laws, something that the intestate,
if so minded, could have devised or bequeathed, but he could not have
devised her dower, and it follows, both logically and conclusively, that

44—174

she does not acquire her dower under any such law. Counsel were asked, in the argument: "If the husband had conveyed all of his real property, and every interest he had therein, would the dower pass?" The answer, of course, was in the negative, as it had to be. If he cannot pass her dower by his deed (even if he specially and by express words included it), how can it pass from him to her if he died intestate? He had no estate or interest in it to pass. It is as separate and distinct from his estate as if he had never owned the land itself from which it is allotted.

We do not agree with the proposition that all property passes either by will or under the intestate laws, for there are cases where this cannot be said correctly. The interest of the wife in an estate by entirety does not so pass at the death of the husband, for she does not take her interest from him by will or otherwise, and there are other instances. There is a wide difference between an interest vesting in another at the death of a person, which merely fixes the time, and the taking of that interest under or through him. It may be derived altogether independently of him, and, whether technically considered or not, it is not passed by will, nor by the laws of intestacy. The law is a technical science, and its principles should be applied to all cases where applicable, and the Legislature is presumed to have acted in view of the established law and the accepted meaning of words when it passes a statute.

A statute should be interpreted according to its language. We cannot go beyond its four corners for aid in its construction. The intent must be found in its words. Nor can we substitute our opinion of what is right or just for the declared or expressed intention of the Legislature, but must presume, absolutely and conclusively, that what was meant is what was said. This is the cardinal rule, and is never departed from. It may be that a widow's dower should be taxed, but she has a perfect right to shield herself from a burden which has not been imposed, by insisting upon the application of the simple and familiar rule we have stated. She says to us: "The power to tax is conceded, but has not been exercised, from some motive of benevolence or consideration for her; but whatever the motive, the Legislature has not declared its will that the widow's dower should be taxed, and you have no right to do what the Legislature has not done."

If we need any authority to back our conclusion, we have it, most abundantly. The courts of this country are quite unanimous in holding that, under similar statutes, the dower is not taxable as an inheritance or "under laws of intestacy." The Illinois cases are the solitary exceptions, and have been severely criticised as giving the wrong rule in such cases, and, while paying due deference to the Court, they are said to be illogical, being wrong in their premises, reasoning, and conclusion. Some of the cases which sustain our view are the following, among the many:

"This is a special tax, and the rule is, that laws imposing such tax are to be construed strictly against the government and favorably to the taxpayer." *Crenshaw v. Moore,* 124 Tenn., 528. "It has been uniformly held that an inheritance tax is not a tax on the property or the real estate of a deceased person, but is a tax laid upon the privilege or right of succession to that property." *McDaniel v. Byrkett,* 120 Ark., 295. "This right (right of dower) originates with the marriage. It is an incumbrance upon the title of the heir at law and is superior to the claims of the husband's creditors. Its origin is so ancient that neither Coke nor Blackstone can trace it, and it is as 'widespread as the Christian religion, and enters into the contract of marriage among all Christians.' . . . Whether it be considered that the widow holds her dower in the nature of a purchaser from her husband by virtue of the marriage contract, or whether it be merely a provision of the law made for her benefit, it cannot be considered that her right is in succession to that of her husband upon his death, or that the husband bestows it upon her in contemplation of death. While it is true that her right to dower is not consummated until the death of the husband, and that it is carved out of only such realty as he owned at his death, it does not follow from this premise that the widow succeeds to his title by the intestate laws. She derives it by virtue of the marriage, and in her right as wife, to be consummated in severalty to her upon the death of her husband." *Crenshaw v. Moore, supra.* "It is true that dower has its origin and continuance by force of the law, and depends upon the husband's death for its consummation. But it is quite another thing to suppose that the estate is dependent upon the law of succession, or owes its existence to any such transfer as the inheritance-tax statutes contemplate. Dower comes to a wife by virtue of the marriage; and the death of the husband serves only to consummate, not to transmit, it. The law that confers dower on the widow is not the law that appoints the inheritance property of a decedent to designated heirs." Ross on Inheritance Taxation, sec. 56. The courts of Pennsylvania have held that a widow's dower is not liable for inheritance tax. *Re Avery's Estate,* 34 Pa. St., 204. The courts of Louisiana have held the same. *In re Marsal's Estate,* 118 La., 212. "We conclude, therefore, that the widow of a deceased person does not take dower as the heir of her husband or by virtue of the intestate laws, but that this estate is inimical to the claim of the heir, and carved out of the estate of the deceased, in spite of and in derogation to the rights of heirs under the intestate laws." *McDaniel v. Byrkett,* 120 Ark., 295. "What the wife receives . . . she receives, not as an heir of her husband, but in her own right—something which belongs to her absolutely, and of which she could not have been deprived by will or by any other voluntary act of her husband without her consent. Under that section, she is not an heir,

within the meaning of our intestate or succession statutes." *In re Bullen's Estate,* 47 Utah, 96. "Strictly speaking, the widow's share should be considered immune, rather than exempt, from an inheritance tax. It is free, rather than freed, from such tax. It is not excepted from the taxable class, because it was never in such class. Like all debts, taxes, costs, expenses, and similar items, it is deducted before any inheritance tax is assessed. The share of the realty and personalty which, under our law, go to the widow, independently of any will or act of the husband, is not, so to speak, a part of his estate, and is no more liable to a succession tax at his death than is her individual property." *Re Strahan's Estate,* 93 Neb., 828. "A widow's dower estate in the lands of her deceased husband, which became vested on her marriage, and consummated on the death of her husband, independent of the husband's will, and not by virtue thereof, was not subject to transfer tax." *In re Weiler's Estate,* 122 N. Y. Supplement, 608. The Supreme Court of Idaho, where the doctrine of community property exists, held that such property was not liable for inheritance tax. *Kohny v. Dunbar,* 21 Idaho, 258. The Supreme Court of Arkansas, in discussing the case of *Billings v. People,* 109 Ill., 472, said: "The opinion in the *Billings case* sets out the statute of that State upon the subject of dower, from which it appears that the estate of courtesy has been given alike to the husband and the wife, and each being given a certain fixed interest in the lands upon the death of either spouse, then the estate is called dower, but it is not the dower of the common law, as the term, 'dower,' at common law, related exclusively to the interest the widow had in the real estate of inheritance." *McDaniel v. Byrkett, supra.* While the report shows that the *Billings case* was carried to the Supreme Court of the United States, a reading of the report of the case there will show that the widow did not appeal from the decision of the lower court, and the question of the liability of the widow's dower for taxation was not discussed in that Court. *Billings v. Illinois,* 188 U. S., 97.

The question of the liability of a widow's dower to an inheritance tax has been passed upon by the courts (upon statutes practically the same as that of North Carolina) of Arkansas, Illinois, Louisiana, Nebraska, New York, Utah, and Tennessee; and the courts of all those States, except that of Illinois, have held that a widow's dower was not subject to taxation. While the Supreme Court of Illinois has held to the contrary, it will be noticed that this court cited no decisions on this subject except its own. The decision in the *Billings case* has been discussed by nearly all the courts in which this matter has arisen since its rendition, and they have all refused to follow the decision of that court. The question of the liability for inheritance tax of community property held by the wife as survivor has been passed upon by the courts of Idaho and

Nevada, and they hold that the community property is not liable to inheritance taxes, because it is not derived by one of the spouses from the other, and there is therefore no succession of it.

It may be added that the Illinois decision was to a great extent influenced by the peculiar wording of the statute of that State in regard to dower. It is not, as we have said, the common-law dower, but an estate with its name, without its legal characteristics.

It is a maxim that three things be favored in law—life, liberty, and dower. Thomas' Coke, 14·; 4 Bacon's Works, 345.

We learn in 2 Blackstone, pp. 131 *et seq.,* that there were five species of dower: (1) *De la plus belle,* where- the widow was endowed of the fairest of the lands held by her in socage, which discharged that held by the lord in chivalry. This disappeared when military tenures were abolished. (2) Dower by particular custom, where she received the whole, the half, or one-quarter of her husband's lands. (3) Dower *ad ostium ecclesiæ,* or dower at the door or porch of the church, when tenant in fee simple endows the wife of the whole or any part of his lands as he shall please to give· her, which, in certain circumstances, she might reject and resort to her dower at common law. (4) Dower *ex assensu patris* was a species of that last kind of dower mentioned, and derived its name from the fact that the dower was taken from the lands of the husband's father with the latter's consent. (5) Dower by the *common law,* which gave her one-third part of all the lands and tenants in which her husband had an estate of inheritance, and of which he was seized at any time during the coverture, to hold for the time of her natural life.

None of these forms of dower, except that of the common law, or dower allotted from the lands of which the husband died seized, ever were known to our law in regard to estates. Formerly, when the widow was endowed of lands only which her husband died seized, it was like dower in copyhold lands, which was governed by custom as to her title and the quantity and proportion she would take, also called free bench, and contradistinguished from dower, which is the estate of the widow in all lands of which the husband was seized at any time during the coverture. Blackstone says that dower *ad ostium acclesiæ* has long since fallen into total disuse because of its uncertainty, and for the reason, too, that she might receive from the law, independently of the husband's volition, a fixed part of his estate in lands of which he was seized at any time during the marriage. This brief review of the subject, based upon the authority of Coke and Blackstone, shows very clearly that we can derive no aid in the construction of our law from old and obsolete rules and customs which have been ignored and finally repealed long ago; and no writer, ancient or modern, even intimates that the husband could, of his will, alien or impair the wife's common-law estate of dower, or that she

acquires her right or title from him, by his intestacy or otherwise; and this is true, whether the dower is allotted by the law of this State from lands of which the husband was seized at any time during the coverture or only of those of which he died seized. In neither case was there any descent or devolution from him which would bring it within the meaning of an inheritance or succession for the purpose of taxation. It is for this reason that the courts have held with practical unanimity, as we have shown, that the wife's dower does not come within the reach of inheritance or succession taxes.

The fact that the widow is allowed an exemption of $10,000 under the last act, whereas no such exemption was allowed before, does not affect the question, so as to show that her dower is taxable, as she may derive property, both real and personal, from her husband by will, and the latter kind of property under the intestacy law, as one of his distributees, and from these exemptions would be taken, as they come within the meaning of the provision taxing property acquired from her husband by will or the intestacy laws, and are therefore taxable, and to them the exemption of $10,000 would apply, and not to property already not taxable by the language of the statute. You cannot take an exemption from something not taxable, or an exemption from an exemption.

Justice HOKE concurs in the dissenting opinion.